[S. F. No. 18245.   In Bank.   July 6, 1951.]

DANIEL H. SOUZA, Petitioner, v. PUBLIC UTILITIES COMMISSION et al., Respondents.

Phillips & Avakian and Spurgeon Avakian for Petitioner.

Everett C. McKeage, Boris H. Lakusta, J. Thomason Phelps, John K. Power and Wilson E. Cline for Respondents.

EDMONDS, J.—By writ of certiorari, Daniel H. Souza, doing business under the name of City Drayage Company, is challenging an order made by the Public Utilities Commission by which it suspended his licenses as a radial highway common

carrier and a highway contract carrier. The question for decision is substantially the same as that presented in *Samuelson* v. *Public Utilities Commission*, 36 Cal.2d 722 [227 P.2d 256].

As in the Samuelson case, the facts are not in dispute. It appears that in 1946, after working for 11 years for a trucking company, Souza started his own business. At the time of the hearing, he owned eight trucks. He maintains an office and a loading dock in Oakland and provides service, daily in some instances, between San Francisco and Oakland and points within a distance of 50 miles. The principal commodities transported are drugs, candies, and toilet preparations. In smaller volume he carries salted nuts, tires, soap, margarine, electric bulbs and coffee and tea extracts.

Souza serves 23 shippers and he has a contract with each of them. Six of the contracts are written; the remainder are oral. Three of the written contracts require a minimum of 100 pounds of freight per month; the fourth calls for a quantity to be determined by the shipper in accordance with the demands of its business.

The duration of the written contracts is for a definite period and thereafter until canceled upon written notice given by either party. Souza entered into seven of the contracts in 1946, nine of them in 1947, and the remainder in 1948. The compensation agreed to be paid is based upon the minimum rates prescribed by the commission.

At no time since he commenced his operations has Souza served more than 26 shippers. Except to obtain his first customer, he has never solicited business. Each new account came to him as a result of the shipper seeking his services. He has consistently refused to give service to firms other than those with whom he has contracts, although additional business is offered to him two or three times a month.

Souza has built his business by providing a particular kind of service for his customers. Drugs and medical supplies are transported on an emergency basis. Deliveries of such shipments are usually made the same day they are received or, at the latest, the following morning. In some instances, single packages are called for and given special attention, although the driver has to alter his usual route to do so. Emergency service is also provided for candies, salted nuts, tools, and occasionally for tires.

Souza's fast service obviates the necessity of refrigerating equipment for the transportation of yeast. On shipments of

coffee, pickups are made from an unmarked stock or supply at the shipper's plant. No segregation or individual markings are necessary for each consignment of coffee, as the drivers make deliveries from a single manifest or bill of lading.

According to Souza, his equipment has no special features, nor do his drivers require any special training. He testified that his intention is to maintain a restricted operation, distinguished from common carrier service by the close personal attention and supervision he gives each shipment and the facilities he provides for emergency deliveries. He personally dispatches each shipment and, on occasion, he makes emergency deliveries himself.

Souza holds permits authorizing him to do business as a radial highway contract carrier and also as a highway contract carrier. Upon findings of fact which are substantially in accord with the foregoing statement of the evidence, the commission revoked these permits and ordered him to cease all operations until he shall have obtained a certificate of public convenience and necessity authorizing him to do business as a common carrier.

In the opinion upon which the order was based, the commission held that the number of shippers served by Souza ". . . is too large to afford the close identity and association which is ordinarily attributable to the relationship between a contract carrier and shipper. The wide variety of commodities handled, without need of special equipment in addition to the broad area served, frequency of service and employees who require no unusual training indicate an operation characteristic of a highway common carrier. Although respondent does personally supervise and dispatch shipments and provide an emergency service, which is the exception and not the general nature of his operations, these factors are not in themselves, when viewed in light of all of the evidence sufficiently restrictive to constitute respondent's operations those of a contract carrier."

From these facts, the commission concluded that Souza "is and has been operating as a highway common carrier." That conclusion, it declared, followed "the guide posts" which it set up in *Pacific Southwest R. R. Assoc.* v. *Nielsen,* 49 Cal. P.U.C. 216.

In an order denying a rehearing, the commission stated that its decision ". . . is somewhat cryptic and, therefore, [it] . . . takes occasion here to spell out in more detail the underlying reasoning." The evidence, it declared, showed ". . . a

holding out to serve the public or a limited portion thereof, despite the existence of contracts. . . . The record further revealed an operation of a permanent or indefinitely continuing nature, with service daily between some points and service less than daily between others. The entire operation was conducted as a single integrated business unit with the use of the same personnel, equipment and facilities for all portions thereof. Under such circumstances, the conclusion was justified, upon the reasoning of . . . [*Pacific Southwest Railroad Association* v. *Stapel,* 49 Cal.P.U.C. 407] . . ., that Souza's entire operation constituted highway common carriage.''

In the main, the grounds relied upon by Souza in attacking the determination of the commission are:

(1) The order includes findings which show that he did not hold out his services to the public generally as a common carrier.

(2) There is no evidence to support the implied conclusion that he has been conducting his operations between the fixed termini or over the regular routes mentioned by the commission.

(3) There is no basis in law for the commission's holding that if a trucker operates as a highway common carrier at some points or over some routes, he is necessarily a highway common carrier at all points and routes which he serves with the same personnel, equipment and facilities.

(4) The commission, in effect, applied a presumption of illegality to his operations and placed upon him the burden of proving his operations to be lawful because of its rule that, prima facie, a highway contract carrier who has 10 or more contracts is engaged in highway common carriage.

In its answer, the commission argues that the order should be upheld upon the principles which it stated and applied in the Nielsen and Stapel cases. However, since the Souza order was made, this court held, in *Samuelson* v. *Public Utilities Com., supra,* that the test of ''substantial restrictiveness'' devised by the commission as determining whether a trucker is a common carrier, ''. . . largely eliminates the factor of dedication or holding out of service to the public or a portion thereof . . .'' and ignores the statutory definition of a common carrier ''. . . when considering the scope of a permittee's operations.'' That conclusion is determinative of the present proceeding.

There is nothing in the uncontradicted evidence which the commission recited in its findings which reasonably can

be said to show that the service which Souza provides has been dedicated to public use and, therefore, "is performed for or the commodity delivered to the public or any portion thereof." (Public Utilities Act, § 2dd.) ▇ As was said in the Samuelson case, ". . . the common law test of common carriage, as repeatedly stated by this court, requires an unequivocal intention to dedicate property to a public use. The 'substantial restrictiveness' doctrine excludes this intention, or at least reduces it to only incidental importance." (36 Cal. 2d at p. 733.)

The rule laid down by the commission in the Stapel case is that it will not consider a carrier's operations in segments, with each pair of termini representing a distinct segment of its business. By its reliance upon the Stapel decision in the present proceeding, the commission indirectly concedes that some of Souza's operations do not come within the definition of common carriage. ▇ The refusal to separate those of a permittee's operations which, as it views them, are common carriage from those which it deems to be contract carriage need not here be considered in view of the conclusion that Souza is not a common carrier.

The order is annulled.

Shenk, J., Carter, J., and Schauer, J., concurred.

Respondent's (P.U.C.) petition for a rehearing was denied August 2, 1951. Traynor, J., voted for a rehearing.