EDMONDS, J.
 

 The Public Utilities Commission instituted an investigation on its own motion into the operations and practices of Walter Alves, doing business as Alves Service Transportation. Following a hearing, the commission entered its order, directing Alves to cease and desist from operating as a highway common carrier between certain designated cities unless and until he obtained a certificate of public convenience and necessity. The order also suspended his permits to operate as a radial highway common carrier and as a highway contract carrier until further order of the commission upon a showing of good cause.
 

 In its opinion, the commission said: ‘ ‘ Having carefully examined respondent’s testimony in its entirety, we conclude that his operations are those of a common carrier. ' It is clear that the only restrictiveness placed upon such operations is controlled by the limitations of respondent’s equipment and his desire to hold in reserve equipment adequate to meet the requirements of so-called regular customers. This, in our
 
 *346
 
 opinion, is not sufficient to remove the operations from a common carrier status.”
 

 At the time of the opinion and order, this court had not decided
 
 Souza
 
 v.
 
 Public Utilities Com.,
 
 37 Cal.2d 539 [233 P.2d 537], and
 
 Samuelson
 
 v.
 
 Public Utilities Com.,
 
 36 Cal.2d 722 [227 P.2d 256], Following the decision in the Samuelson case, the commission granted Alves a rehearing for the purpose of considering its applicability, if any, to the issues determined by the order against him. Pending rehearing, the Souza case also was decided. On rehearing, the commission entered a new order requiring Alves to cease and desist from operating without a certificate as a highway common carrier between designated fixed termini. The listing of prohibited termini was altered from that in the original order. The order on rehearing also suspended. Alves ’ permits to operate as a radial highway common carrier and as a highway contract carrier, but the term of suspension was set at three days.
 

 The opinion on rehearing took cognizance of the Samuelson and Souza cases. Abandoning the ground of “restrictiveness” upon which it had relied in its original opinion, the commission stated: “ We are aware that the court in the Samuelson and Souza cases
 
 (supra)
 
 rejected the test of ‘substantial restrictiveness’ for determining whether a trucker is a common carrier, and of course we respect and accept its judgment. However, the evidence in this proceeding amply demonstrates that the respondent has held out his services to the public or a portion thereof as is indicated by the wide variety of commodities he transported, shipments of which ranged in weight from one pound to 198,180 pounds, and the large number of persons he served in addition to the one shipper with whom he had a written contract and four others with whom he had oral arrangements. This record cogently establishes that the respondent has evinced the unequivocal intention to dedicate his property to a public use required by the court’s ruling in the Samuelson and Souza cases
 
 (supra),
 
 and we therefore find that the respondent is engaged in common carriage.”
 

 In the present proceeding, Alves, by writ of review, is challenging the jurisdiction of the commission to curtail his operations. The controversy centers upon the sufficiency of the evidence to support its order.
 

 There is no serious dispute as to the facts. Briefly stated, they are as follows:
 

 Alves commenced business in 1946 with two trucks. At present, his fleet consists of 14 tractors, 14 semitrailers, and
 
 *347
 
 two “bob-tail” trucks. At all times since 1946 he has held radial highway common carrier and highway contract carrier permits. He has never held, nor applied for, a certificate of public convenience and necessity to operate as a highway common carrier.
 

 He maintains offices, with facilities for parking equipment, in San Leandro and Los Angeles. Although he operates on no fixed schedule, almost daily his trucks carry shipments between the San Francisco Bay area and the Los Angeles area in both directions. The shortest route between the point of departure and the destination is used. Besides his frequent service between the San Francisco and Los Angeles areas, he transports goods to a large number of other points throughout the state.
 

 According to Alves, he does not solicit any business or advertise, although his name appears in the classified section of the telephone directory. During the first six months after he commenced business, about 10 persons tendered property to him for transportation. In 1948, his customers consisted of at least 27 different persons or corporations. He added 10 more shippers in 1949 and another six in 1950. He has a written contract with only one of these customers. With four others he has oral contracts, although in at least two instances there is some dispute as to whether the oral agreement constitutes a binding contract. His list of customers is variable, some being dropped and some being added from time to time. Shipping orders are accepted by telephone. The evidence reasonably would support a finding that he accepts new customers within the limits of his equipment, and that any refusals to carry goods have been based upon economic considerations.
 

 Apparently he is willing to carry any type of freight. His shipments range in weight from one pound to 198,180 pounds and in type from fresh flowers to heavy machinery. The equipment which he uses is similar to that of other carriers, rather than being of any specialized type to meet the needs of particular customers.
 

 Alves contends that he does not operate as a highway common carrier, nor does he operate between fixed termini or over a regular route. The evidence, he says, is insufficient to sustain the finding that he has dedicated his property to a public use. In addition, he argues that the suspension of his permits was arbitrary, unreasonable, and an abuse of discretion. By
 
 *348
 
 its answer to bis petition, the commission disputes each of these contentions.
 

 The situation here presented is entirely different from that in the Samuelson and Souza cases,
 
 supra,
 
 upon which Alves relies. Samuelson was operating under only a highway contract carrier permit. His operations were restricted to an arbitrary limit of 30 shippers at any one time. He had served only 47 shippers during his entire period of operations. He did not solicit business and he limited the type of freight which he would carry. With all shippers he had written or oral contracts. The commission issued a cease and desist order upon the ground that Samuelson was not conducting his business with “substantial restrictiveness.” This court annulled the order because there was no showing that Samuelson unequivocally intended to dedicate his property to a public use. We said: “The ‘substantial restrictiveness’ doctrine excludes this intention, or at least reduces it to only incidental importance.” (P. 733.)
 

 In the Souza case a substantially similar situation was presented, although Souza was operating under both radial highway common carrier and highway contract carrier permits. From the record, however, it appeared that he had not operated as a common carrier, despite the fact that he had a permit to do so. This court, for the same reasons as those stated in the Samuelson case, annulled the commission’s order suspending his permits. We held it unnecessary to consider the question whether the commission could properly refuse to separate a permittee’s common carrier operations from his contract carrier business.
 

 In the instant case, however, there is evidence of a large scale and growing enterprise serving all profitable business offered within the limitations of its equipment. The vast majority of shippers are served without contractual arrangements. No limit is placed on the type, or weight, of product carried. It does not appear that any profitable business was refused, or that any limit was placed upon the number of shippers served. From such evidence, the commission reasonably could conclude that Alves unequivocally intended to dedicate his property to a public use. The evidence of frequent service between certain cities is also sufficient to support a finding that, at least as to some of his business, he operated between fixed termini.
 

 But even if Alves was operating as a common carrier, he held a valid permit entitling him to do so. There is also evi
 
 *349
 
 dence tending to prove that, in addition to common carriage, be was operating as a highway contract carrier, for which he likewise held a permit. It becomes important, therefore, to distinguish carefully between the various types of operation which Alves might have conducted.
 

 The Highway Carriers’ Act (Stats. 1935, ch. 223, p. 878, as amended; 2 Deering’s Gen. Laws, 1949 Supp., Act 5129a; repealed by Stats. 1951, ch. 764, pp. 2025, 2257-2258; now Pub. Util. Code, § 3501 et seq.) at the time of the commencement of this proceeding contained the following definitions:
 

 “The term
 
 ‘highway common carrier’
 
 when used in this-act means every highway carrier operating as a common carrier subject to regulation as such by the Railroad Commission under the Public Utilities Act of the State of California as amended.” (§ 1[g] ; now Pub. Util. Code, § 3513.)
 

 “The term
 
 ‘radial highway common carrier’
 
 when used in this act means every highway carrier operating as a common carrier not heretofore subject to regulation as such by the Railroad Commission under the Public Utilities Act of the State of California, as amended.” (§ 1 [h] ; now Pub. Util. Code, § 3516.)
 

 “The term
 
 ‘highway contract carrier’
 
 when used in this act means every highway carrier other than a highway common carrier as defined in subsection (g) and every radial highway common carrier as defined in subsection (h).” (§ 1 [i]; now Pub. Util. Code, §3517.)
 

 Section
 
 2%
 
 of the Public Utilities Act (Stats. 1915, ch. 91, p. 115, as added by Stats. 1935, ch. 664, p. 1831, as amended; 2 Deering’s Gen. Laws, 1949 Supp., Act 6386; repealed by Stats. 1951, ch. 764, pp. 2025, 2257; now Pub. Util. Code, § 201 et seq.) provided these further definitions:
 

 “The term ‘highway common carrier’ when used in this act means every corporation or person, . . . operating . . . any auto truck . . . used in the business of transportation of property as a common carrier for compensation over any public highway in this State between fixed termini or over a regular route, . . .” (§ 2¾ [a] ; now Pub. Util. Code, § 213.)
 

 “The words ‘between fixed termini or over a regular route’ when used in this act mean the termini or route between or over which any highway common carrier usually or ordinarily operates any auto truck . . . even though there may be departures from said termini or route, whether such departures be periodic or irregular. Whether or not any auto truck ... is operated by a highway common carrier
 
 *350
 
 ‘between fixed termini or over a regular route’ within the meaning of this act shall be a question of fact and the findings of the commission thereon shall be subject to review.” (§ 2¾ [b] ; now Pub. Util. Code, § 215.)
 

 Reading these various definitions as a whole, the following pattern of possible types of transportation appears. A “highway common carrier . . . subject to regulation as such” by the Public Utilities Commission is a highway carrier transporting ‘ ‘ property as a common carrier for compensation . . . between fixed termini or over a regular route.” A common carrier by auto truck which does not operate between fixed termini or over a regular route is a “radial highway common carrier.” Thus, the difference between two possible types of common carriage is dependent upon whether it is performed “between fixed termini or over a regular route.” The third possible type of highway carriage with which we are concerned is the “highway contract carrier,” defined by exclusion as every highway carrier which is not a common carrier operating between fixed termini or over a regular route. In other words, if it does not operate as a common carrier, the highway contract carrier may operate between fixed termini or over a regular route.
 

 Alves held permits to operate both as a radial highway common carrier and as a highway contract carrier. Thus, under the quoted statutory definitions, he legally could operate as a common carrier; he could also transport goods as a contract carrier between fixed termini or over a regular route. But he could not operate as a common carrier between fixed termini or over a regular route. The commission has entirely ignored this essential distinction. Although it found that Alves operated as a highway common carrier between fixed termini and over regular routes, it did not find that he conducted specified common carrier operations between certain fixed termini. The specific findings are simply that he operated as a common carrier and that he operated between certain fixed termini.
 

 In a supplemental brief, filed at the request of this court, the commission states that it treated the problem “as having two parts,” each of which it resolved separately. It first determined whether Alves was operating as a common carrier, without regard to the termini served. Then, assuming “that the carrier’s operations are those of a common carrier,” it determined whether he operated between particular pairs of termini, or over particular routes.
 

 
 *351
 
 According to the commission, it “does not claim that the evidence in the present record warrants a finding that operations between any particular pair of termini, . . . considered apart from the rest, were those of a common carrier.” It states: “Having found that . . . [Alves’] business, considered as an undifferentiated whole, was that of a common carrier, and having then found that some of his operations were between fixed termini and over regular routes, the Commission considered that . . . [his] operations between those termini and over those routes were those of a common carrier.” In effect, the commission concedes that there is no evidence which would support a finding that Alves transported property as a common carrier between fixed termini or over a regular route.
 

 The commission apparently is relying upon the rule which it laid down in
 
 Pacific Southwest Railroad Assn.
 
 v.
 
 Stapel,
 
 49 Cal. Pub. Util. Com. 407. It there said that it will not consider a carrier’s operations in segments. If a carrier operates a portion of an integrated business as a common carrier, and another portion of its business as a contract carrier between fixed termini, applying the rule of the Stapel case, the commission will combine the entire business to find that the carrier is operating as a common carrier between fixed termini. Such a rule is arbitrary and unreasonable, at least as applied to a carrier holding both radial highway common carrier and highway contract carrier permits. By the Stapel rule, as to such a carrier, legal operation under each permit would constitute illegal operation as a highway common carrier.
 

 In this case, there being no evidence of operations between fixed termini as a common carrier, application of the Stapel rule contravenes section 4 of the Highway Carriers’ Act. (Stats. 1935, ch. 223, p. 878, as amended; 2 Deering’s Gen. Laws [1943], Act 5129a; repealed by Stats. 1951, ch. 764, pp. 2025, 2257-2258; now Pub. Util. Code, § 3542.) It provided: “No person or corporation shall be permitted by the Railroad Commission to engage, nor shall any person or corporation engage in the transportation of property on the public highway, both as a common carrier and as a highway contract carrier of the same commodities between the same points.” The clear implication of the statute is that a carrier may engage in both common and contract carriage, so long as the same commodities are not carried between the same points in both capacities. Whether Alves has violated
 
 *352
 
 the stated restriction has not been decided by the commission, and the evidence does not tend to show any such violation.
 

 The order is annulled.
 

 Shenk, J., Carter, J., and Schauer, J., concurred.
 

 TRAYNOR, J.
 

 Alves has permits under which he may legally operate both as a radial common carrier and as a highway contract carrier. Under these permits he may operate as a contract carrier between fixed termini or over regular routes; he may not do so, however, as a common carrier. Since part of his operations are between fixed termini, the question presented is whether there is substantial evidence to support the commission’s finding that he conducts these operations as a common carrier rather than as a contract carrier. Since the commission concedes that the evidence would not support a finding “that operations between any particular pair of termini, . . .
 
 considered apart from the rest,
 
 were those of a common carrier,” the majority opinion concludes that there is no evidence to support the commission’s finding. (Italics added.) In this case, however, the determination of the character of the carriage between any particular pair of termini cannot be made by considering such carriage by itself.
 

 In
 
 Samuelson
 
 v.
 
 Public Utilities Com.,
 
 36 Cal.2d 722, 733 [227 P.2d 256], the court stated that “the common law test of common carriage . . . requires an unequivocal intention to dedicate property to a public use.” (See, also,
 
 Souza
 
 v.
 
 Public Utilities Com.,
 
 37 Cal.2d 539, 543 [233 P.2d 537].) As the majority opinion points out, this intent may be manifested by the manner in which the business is conducted: “In the instant case, however, there is evidence of a large scale and growing enterprise serving all profitable business offered within the limitations of its equipment. The vast majority of shippers are served without contractual arrangements. No limit is placed on the type, or weight, of product carried. It does not appear that any profitable business was refused, or that any limit was placed upon the number of shippers served. From such evidence, the commission reasonably could conclude that Alves unequivocally intended to dedicate his property to a public use.” If consideration is restricted, however, to a particular segment of the business, it may be impossible to determine what the carrier’s intent is. Thus as between a given pair of termini, the carriage, although regular, may be
 
 *353
 
 for so few shippers that it cannot be determined whether the carrier is selecting his clientele, or in reality holding himself out to serve the public generally. In such cases only by looking to the overall plan of the carrier's operations can it be determined on what basis he is operating the limited segments thereof. Thus if it appears from the overall operations that the business is being conducted on a common carrier basis, it is reasonable to infer that the regular carriage between each pair of termini is being conducted in the same manner.
 

 To permit this inference to be drawn does not result in denying a carrier having both radial common carrier and highway contract carrier permits the right to conduct both types of business. By implying that it does, the majority opinion confuses the question of what types of operations are legally permissible with the question of how the existence of any given type may be proved. If in fact the operations between fixed termini or over regular routes are conducted on a contract rather than on a common carrier basis, the carrier should have no difficulty in so showing. In the present case, however, the evidence of the character of the operations between each pair of termini, when considered alone, is equivocal. Alves has not demonstrated that his method of operation between fixed termini differs from his method of operation in general. Accordingly, the commission was justified in concluding that the general pattern of common carrier operation that appeared from Alves’ business when considered as a whole, established that his operations between fixed termini were of the same sort.
 

 I would affirm the order.
 

 Gibson, C. J., and Spence, J., concurred.
 

 Respondents’ petition for a rehearing was denied September 10, 1953.
 

 Gibson, C. J., Traynor, J., and Spence, J., were of the opinion that the petition should be granted.