[S. F. No. 18796.  In Bank.  Mar. 19, 1954.]

CALIFORNIA MANUFACTURERS ASSOCIATION (a Corporation), Petitioner, v. PUBLIC UTILITIES COMMISSION, etc., Respondent.

Jesse H. Steinhart, John J. Goldberg and Charles E. Hanger for Petitioner.

Everett C. McKeage and Boris H. Lakusta for Respondent.

Arlo D. Poe as Amicus Curiae on behalf of Respondent.

TRAYNOR, J.—By writ of review, California Manufacturers Association is challenging a decision of the Public Utilities Commission fixing rates for carrying general commodities by truck on the ground that the commission failed to comply with section 726 of the Public Utilities Code. That section provides that "In any rate proceeding where more than one type or class of carrier . . . is involved, the commission shall consider all such types or classes of carriers, and . . . fix as minimum rates applicable to all such types or classes of carriers the lowest of the lawful rates so determined for any such type or class of carrier." The commission found that certain specified rate adjustments "will provide the lowest of the lawful rates for any or all types and classes of for-hire carriers involved" and revised Highway Carriers' Tariff No. 2 accordingly. The rates prescribed are not attacked as unjust, excessive, or discriminatory. It is not alleged that any party to the proceeding has been injured. It is not alleged that the commission acted arbitrarily or that its findings are not supported by substantial evidence. The validity of the decision is challenged solely on the ground that the commission failed to follow certain procedural steps allegedly required by section 726.

Petitioner contends that the commission did not comply with that section since, as between highway common carriers, radial common carriers, and contract carriers, it did not (1) first determine lawful rates for each class of carrier separately and (2) then select from among such lawful rates the lowest thereof as the applicable minimum rates. The commission concedes that it did not determine separate lawful rates for each class of carrier and then select the lowest thereof, but it contends that the procedure it followed resulted in a

determination of the same lowest of the lawful rates as would have been determined had it adopted the procedure advocated by petitioner. Accordingly, it contends that it complied with the statute.

It bears emphasis that the end product of rate determination under section 726 is not separate lawful rates for each type of carrier, but a single schedule of lowest lawful rates that is to apply to all types. The basic question presented therefore is whether or not the commission could and did determine the lowest lawful rates applicable to any type of carrier without fixing lawful rates for each type of carrier. If it achieved this end product without segregating the cost and other data according to the legal categories of carriers involved, no purpose would be served by requiring it to develop three separate schedules of lawful rates and then to choose the lowest of these. In other words, if, in the light of the applicable standards of rate making, the commission could and did determine directly from all of the evidence before it that for a given service a particular rate was necessarily the lowest it could lawfully determine for any of the types or classes of carriers involved, it complied with the statute and did not need to determine any additional lawful rates for each type or class.

Before 1935 the commission had no authority to regulate the rates of truckers who did not operate between fixed termini or over regular routes as highway common carriers. In 1935 the Highway Carriers' Act (Stats. 1935, ch. 223) was enacted and the Public Utilities Act amended (Stats. 1935, chs. 664, 700, 702) to provide for rate regulation of other land carriers for hire. Section 10 of the Highway Carriers' Act (now Pub. Util. Code, §§ 3662-3665) authorized the commission to fix maximum or minimum or maximum and minimum rates for permitted carriers, that is, radial common carriers and contract carriers, and provided that such minimum rates should not be higher than the current rates of common carriers subject to the Public Utilities Act, that is, railroads and highway common carriers. In addition, the latter carriers were prohibited without commission authority from filing lower rates than maximum reasonable rates for the purpose of meeting competitive charges of permitted carriers if such rates should be lower than the charges of the permitted carriers, and the commission was authorized to prescribe such rates for railroads and highway common carriers as would provide an equality of transportation rates for the

transportation of property between all competing agencies of transportation. (Pub. Util. Act, §§ 13½, 32½, Stats. 1935, ch. 700, now Pub. Util. Code, §§ 452, 731.) In 1937, section 726 was enacted as section 32d of the Public Utilities Act (Stats. 1937, ch. 721) providing for the determination of lowest lawful rates that should be applicable to all carriers for the stated purpose of promoting "the freedom of movement by carriers of agricultural commodities, including live stock, at the lowest lawful rates compatible with the maintenance of adequate transportation service." ▮ When these provisions are considered together it is clear that the Legislature established a pattern of rate regulation guaranteeing to all carriers the right to compete with each other on equal terms but subject to minimum rates developed for the type or class of carrier best suited economically to perform a particular service. Other than providing in section 10 of the Highway Carriers' Act (now Pub. Util. Code, § 3662) that the commission should consider the cost of the service performed, the value of the commodity transported, and the value of the facility reasonably necessary to perform the transportation service, the Legislature did not specify any particular procedure to govern the commission in determining the lowest of the lawful rates.

The present proceeding is the latest of many supplemental proceedings that have been undertaken to adjust the minimum rates first established in 1938. (Dec. 31606, 41 C.R.C. 671.) In determining minimum rates the commission has never followed the procedure advocated by petitioner. It has always sought directly to determine the lowest lawful rate applicable to any class or type of carrier. "We limit ourselves to the task contemplated by the Highway Carriers' Act, i.e., the fixation of a bottom level for rates so as to end destructive rate cutting practice, and where necessary, the fixation of a ceiling so as to prevent excessive rates, thus generally leaving to the carriers a bargaining zone within which they can adjust particular rates to meet their own transportation conditions, as well as the commercial needs of the shippers whom they serve.

"There is before us here adequate evidence from which to determine the rate level below which no carrier should under ordinary circumstances be permitted to go in competing with other carriers." (41 C.R.C. at 686.)

Its procedure in determining lowest lawful rates was fully articulated by the commission in a supplemental opinion filed

on March 27, 1952. (Dec. 46912, 51 Cal.P.U.C. 586.) In fixing the lowest lawful rate for any given service the commission determines the most efficient way of rendering such service that is used by any of the various types of highway carriers involved. It then considers the cost of providing such service and the value of the equipment required to determine the lowest lawful rate. It does not, however, determine separately the costs and value of equipment of highway common carriers, radial common carriers, and contract carriers.* The commission's experience has demonstrated that ordinarily some types of carriers are more efficient in rendering certain services and other types are more efficient in rendering other services. Thus, a contract carrier that limits its business to a few selected customers that ship in regular truckload lots can provide service for such customers more economically than a common carrier that must accept all business offered. On the other hand, common carriers that provide regular service between fixed termini will ordinarily be better equipped than contract carriers to handle small and irregular shipments from many shippers. ▮ Whether or not, however, a given carrier can provide a specified service efficiently and economically will not necessarily depend upon the type of permit or certificate that it holds, but on whether it has the plant and equipment to do the job efficiently and can secure the business necessary to enable it to make the best use of its property. Thus, to determine what is the most efficient method of providing a given service and the cost thereof, the commission does not segregate the evidence according to classes of carriers, but determines instead what carriers of all classes are providing the service most efficiently and economically. In this manner it is able to determine the lowest justifiable costs for performing the service by any of the different classes of carriers.

▮ Section 726 does not prohibit the commission from considering the cost and value data provided by all types of carriers in determining the proper cost of, and the value of the equipment reasonably necessary for, any given service. It expressly requires the commission to "consider all . . .

---

*The third factor mentioned in section 10 of the Highway Carriers' Act is the value. of the commodity transported. Since the rates determined under section 726 are applicable to all types of carriers providing the same services, and since the value of the commodity is independent of the legal character of the carrier, it is clear that the value of the commodity transported is a factor that would enter equally into the lawful rates of all types of carriers.

types or classes of carriers'' in fixing the lowest lawful rate.

■ In rate making it is settled that the commission need not accept cost figures that are unjustifiably high because of inefficient methods of operation. (*Pacific Tel. & Tel. Co.* v. *Public Utilities Com.,* 34 Cal.2d 822, 826 [215 P.2d 441], and cases cited.) Accordingly, in fixing the lawful rate for any type of service by any type of carrier, the commission is entitled to consider the cost of providing the service efficiently, and section 726 expressly authorizes it to consider the available data from all types of carriers to determine what the cost of the most efficient service is.

■ Once it has determined cost and value data applicable to the performing of the service most efficiently, the commission may consider that cost and value data alone in fixing the lawful rate for any type of carrier that may legally adopt the most efficient method of providing the particular service involved. (*Pacific Tel. & Tel. Co.* v. *Public Utilities Com., supra.*) For example, the efficient handling of small shipments between fixed termini might require the carrier to solicit and accept all the business of that type that it could get. A radial common carrier or a contract carrier could not solicit and accept all such business without illegally entering the highway common carrier field. Accordingly, to compete for such business such carriers would have to restrict their operations in such a way as to make it impossible for them to render the most economical service. In such a case, if the commission looked to their costs alone, the lawful rates it would determine would necessarily be higher than the lawful rate for highway common carriers. ■ In determining the lowest lawful rate, no purpose would be served by determining a rate other than the lawful rate for the type of carrier that could legally provide the most economical service. The commission could properly consider, however, the cost and other data of the radial common carriers and contract carriers to determine whether their operations indicated economies that highway common carriers might legally put into effect.

■ On the other hand, the efficient handling of truckload shipments by regular shippers might require the carrier to restrict its operations to providing service for a limited number of selected customers. The carrier could legally so restrict its operations only if it were a contract and not a common carrier. In determining the lowest lawful rate for such service no purpose would be served by determining separate lawful rates for carriers that could not legally conduct their

business in the most efficient manner. The commission could properly consider, however, the cost data of the common carriers to determine whether their operations indicated economies that contract carriers might legally put into effect.

The commission's procedure for determining the lowest lawful rate on the basis of the most efficient method of providing the service necessarily results in a determination of the lowest rate that might be found in any given case for any of the legal categories of carriers. From all of the data before it the commission determines the relevant cost and value data appropriate to providing the most efficient and economical service. It may legally consider these data in fixing the lawful rate for any carrier that may legally operate in the most efficient manner. One or more of the types or classes of carriers will be able legally to operate in the most efficient manner. Their lawful rates will necessarily be lower than those of types or classes who cannot legally operate with maximum efficiency. Accordingly, the commission has correctly concluded that lowest lawful rates based on the most efficient method of operation will be the lowest of the lawful rates for any and all types and classes of carriers involved within the meaning of section 726.

To require the commission to segregate the cost and other data, fix a lawful rate for each category, and then select the lowest of such rates would not affect the rates ultimately determined. It would, however, complicate the already difficult task of the commission. Following such a procedure, the commission would find a tentative lawful rate for each type of carrier based on the cost and other data provided by the carriers of that type alone. It would then consider in the light of all of the evidence whether the carriers of each type were operating as efficiently as they legally might. It would then adjust the tentative lawful rates to reflect the costs of the service by the three types of carriers operating in the most efficient manner possible. It would then be in a position to select the lowest of the lawful rates. Before it could proceed in the foregoing manner, however, it would have to determine in each case in what capacity the carrier offering data with respect to a given service was operating. Many carriers operate part of their business as highway common carriers and parts as radial common carriers or contract carriers. Others have permits to operate both as radial common carriers and contract carriers. The dividing lines between these various categories are difficult to

determine (see *Samuelson* v. *Public Utilities Com.*, 36 Cal.2d 722 [227 P.2d 256]; *Souza* v. *Public Utilities Com.*, 37 Cal. 2d 539 [233 P.2d 537]; *Nolan* v. *Public Utilities Com.*, 41 Cal.2d 392 [260 P.2d 790]), and the carriers themselves may not have segregated their business in a manner to permit clear determinations of the capacities in which they operate the various segments thereof. (See *Alves* v. *Public Utilities Com.*, 41 Cal.2d 344 [260 P.2d 785].) Even if the commission followed this complex procedure it would be led to conclude that certain carriers operating legally were providing or could provide given services in the most efficient and economical way. The actual or justifiable costs of these carriers would be used to determine the lawful rates of the group or groups to which they belonged. Since they would be, or could become, the most efficient, their lawful rates would be the lowest lawful rates, and all of the findings and determinations with respect to the lawful rates of less efficient types of carriers would be purposeless. Except for errors, however, that might arise from following the more cumbersome procedure, the commission would reach the same results that it has in this proceeding in which it determined the lowest lawful rates directly from all of the evidence on the basis of the cost and value data properly attributable to providing the service in the most efficient and economical way. Section 726 does not require it to do more.

The order is affirmed.

Gibson, C. J., Shenk, J., and Carter, J., concurred.

EDMONDS, J.—By section 726 of the Public Utilities Code, the Public Utilities Commission is required to ''consider all . . . types or classes of carriers, and . . . fix as minimum rates applicable to all such types or classes of carriers the lowest of the lawful rates *so determined for any such type or class* of carrier.'' (Emphasis added.) Three of the commissioners signed the order fixing minimum charges upon evidence in which the cost factors were not segregated according to the type or class of carrier. Instead, in the words of the order, '' [t]he nature of the traffic rather than the operating authority held by the carrier has governed the cost determinations.''

Two of the commissioners dissented from the order for the reasons stated by them in a dissent to an earlier decision, involving the same code section. There they said:

''Section 726 of the Public Utilities Code is specific in

stating that in any rate proceeding where more than one type or class of carrier, 'as defined in this part or in the Highway Carriers' Act, is involved,' the Commission shall consider all such types or classes of carriers. Having done this, the Commission is to 'fix as minimum rates applicable to all such types or classes of carriers the lowest of the lawful rates so determined for any type or class of carrier.' The majority opinion herein sets forth at length the procedure that has been followed. It seems clear that what consideration has been given to types or classes of carriers dealt with them according to the services rendered or commodities transported, rather than according to their legal classifications as prescribed by section 726 of the Public Utilities Code. While this may have produced results equally desirable, it is not in accord with the express mandate of the statute." (Dec. 46912, 51 Cal.P.U.R. 586, 602.)

In the present proceeding, the majority of the commission based their conclusion upon a decision rendered 15 years ago, in which it was held that the method now employed would prove to be more satisfactory than the procedure fixed by section 726 of the Public Utilities Code. (41 C.R.C. 671.) Many of the reasons stated there are included in the opinion of Justice Traynor. Essentially, they purport to show that the results of the two methods would be the same, but the commission's way is more satisfactory in reducing costs, time, and the possibility of error which would be encountered if the procedure fixed by the Legislature were followed.

Although these arguments well might be addressed to the Legislature in urging a repeal or modification of the section, in my opinion they furnish no legal basis for disregarding its terms. I see no escape from the conclusion that the commission has not made a determination of rates according to the "type or class of carrier" as it is required to do by the section. And I can find no justification, upon any ground of expediency, for a judicial refusal to enforce the requirement of the statute.

I would annul the order.

Schauer, J., and Spence, J., concurred.

Petitioner's application for a rehearing was denied April 14, 1954. Edmonds, J., Schauer, J., and Spence, J., were of the opinion that the petition should be granted.