[Civ. No. 9057.   Third Dist.   Aug. 16, 1957.]

THE PEOPLE ex rel. PUBLIC UTILITIES COMMISSION, Appellant, v. LESTER J. GEIJSBEEK et al., Respondents.

Everett C. McKeage, Harold J. McCarthy and Mary Moran Pajalich for Appellant.

Marquam C. George for Respondents.

SCHOTTKY, J.—Plaintiff above-named, through the Public Utilities Commission of the State of California, filed a complaint in the Superior Court of Tehama County for penalties, charging defendants with 14 violations of article XII, section 22, of the Constitution of the State of California and sections 494 and 532 of the Public Utilities Code, in that on 13 occasions they had charged less and on one occasion more than their applicable tariff rates. Three other causes of action charging violations of a different section of the Public Utilities Code were dismissed at appellant's request prior to trial. The sections of the Constitution and Public Utilities Code above mentioned prohibit highway common carriers, which are public utilities, from charging or collecting any different compensation for the transportation of freight than the rates and charges specified in their tariffs. Section 2104 of the Public Utilities Code provides for the bringing of such action, and section 2107 provides a penalty of not less than $500 nor more than $2,000 for each offense.

The complaint as amended consists of 17 counts, three of which were dismissed at appellant's request prior to the trial. The fourth count is typical of the remaining 14 counts. In that count the plaintiff alleged that on October 10, 1952, the

302

defendants transported a shipment of lumber as a highway common carrier from Willits to Van Nuys, and that for the said transportation the defendants received compensation less than and different from that prescribed in their filed tariff.

Defendants, by their amended answer, admitted their public utility status, admitted that they had published and filed with said commission tariffs of rates and charges applicable to the transportation of lumber and forest products, denied that they performed the transportation alleged in the complaint but admitted that they had transported shipments of lumber on the dates and between the points set forth in plaintiff's amended complaint. They denied that they had transported the shipments of lumber as a highway common carrier and alleged that the shipments were transported as a highway permit carrier, and that for the said shipments they received compensation in accordance with the provisions of Highway Carriers Tariff Number 2 issued by the Public Utilities Commission. These commission established rates were different from those rates filed with the commission by defendants under their highway common carrier permit.

The facts, which are not in substantial dispute, may be summarized as follows:

On June 10, 1946, respondents were issued a permit by the then Railroad Commission, now the Public Utilities Commission, which authorized them to transport property in general over the public highways of California for compensation as a radial highway common carrier as defined by statute. A radial highway common carrier is a common carrier of property other than a highway common carrier. (Pub. Util. Code, § 3516.) A highway common carrier is one who transports property over the public highways between fixed termini or over a regular route. (Pub. Util. Code, § 213.) "Between fixed termini or over a regular route" is defined as the termini or route between or over which any highway common carrier usually or ordinarily operates even though there may be periodic or irregular departures from such termini or route. (Pub. Util. Code, § 215.) A certificate of public convenience and necessity is a prerequisite to the lawful operation of a highway common carrier. (Pub. Util. Code, § 1063.)

On March 11, 1949, respondents filed Application Number 30123 with the Public Utilities Commission for the issuance of a certificate of public convenience and necessity to transport lumber and forest products between named points, over named routes and 20 miles laterally of the proposed routes in

Northern California, roughly from Viola on the north to San Francisco on the south. It recited, under oath, the following on pages 3 and 4 of the application:

"XII.

"The following conditions exist which are relied upon by applicant as justification for the granting of a certificate of public convenience and necessity:

"That the lumber mills located throughout the territory proposed to be served are for the most part dependent upon truck service for the shipment of their products; that such service as is now available consists principally of permitted carriers; that it will be to the benefit of the lumber mills and in the public interest generally that the common carrier service such as is proposed by the applicant be instituted in lieu of the existing service.

"That the applicant has been transporting substantial quantities of lumber and forest products between points here involved and the volume of such shipments has increased due to public demand. Applicant is doubtful as to the exact scope of the operations which may be performed under said permit issued by your Commission, and due to the ever increasing public demand for its service, has concluded that certification of its operations is required in order that its service may be perpetuated in the public interest to insure a service to the public generally which it requires.

"Applicant has equipment specially designed for lumber hauling and personnel experienced in performing such service."

After public hearing, the Public Utilities Commission, by Decision Number 43427 granted the certificate of public convenience and necessity authorizing respondents to operate an unscheduled (on-call) service as a highway common carrier for the transportation of lumber and forest products between all of the proposed termini and over all of the requested routes (with one minor exception) and all points located laterally within twenty miles of the authorized routes.

Thereafter, respondents filed a written acceptance of the certificate granted and filed their tariff with the Public Utilities Commission, publishing their rates and charges for the transportation of lumber and forest products between points and over the routes which their certificate of public convenience and necessity authorized them to serve.

Respondents later applied for and were granted an extension of their highway common carrier certificate to include

their on-call lumber hauling operations on the north to the Oregon border and on the south to the Mexican border over named highways, and to serve certain points over certain routes which they had not theretofore been authorized to serve as a highway common carrier.

Respondents were also granted a permit to operate as a highway contract carrier.

The evidence is undisputed that on each of the dates mentioned in the fourth to the seventeenth causes of action, inclusive, respondents transported the shipments of lumber described in the complaint between the termini therein alleged; that respondents had applicable rates for such transportation filed with said Commission and in effect at all of such times and that in each instance they charged and collected rates other than their tariff rates. In 13 instances the rates charged were less than their filed tariff rates and in one instance more than such rates. The evidence is also undisputed that each such shipment was made between points or over routes which respondents were authorized to serve under their certificates of public convenience and necessity.

Respondents' defense, admitted over objection, was that although they were authorized to perform the transportation as a public utility, they nevertheless performed it as a nonpublic utility under the authority of their radial highway common carrier permit; that although they had published tariff schedules or rates and charges applicable to the transportation of lumber and forest products at all of the times mentioned in the fourth to the seventeenth causes of action, inclusive, they nevertheless performed the transportation at rates fixed by the Commission for permitted carriers (other than certificated carriers).

The court denied appellant's motion for a directed verdict and submitted to the deliberation of the jury the question whether respondents in performing the transportation were acting as a public utility (highway common carrier) or a nonpublic utility (radial highway common carrier). The court instructed the jury that "Whether the defendants operated between fixed termini or over a regular route is a question of fact to be determined by you from the evidence presented." The jury found for the respondents on all causes of action, and judgment was entered on the verdict. Appellant's motion for judgment notwithstanding the verdict was denied, as was its motion for a new trial, and this appeal followed.

Appellant's principal contention is that respondents unequivocally dedicated their service to the public as a public utility (highway common carrier) for the transportation of lumber and forest products between the points named in their certificates and in their tariff; that they established the public utility service and, as they stipulated, never abandoned it; that any transportation of lumber between such points is transportation as a public utility as a matter of law, and not as any other type of highway carrier; that the granting and acceptance of the certificates of public convenience and necessity *ipso facto* nullified their existing permits insofar as they were inconsistent with the certificates, and that the court below erred when it allowed a jury to determine that respondents were not a public utility on the dates set forth in the complaint.

Respondents state that they believe that the issue involved in this case is as follows: May a for-hire carrier authorized to perform operations by the Public Utilities Commission of the State of California as a radial highway common carrier and a highway common carrier perform operations under either or both of the operating authorities? Appellant states that respondents' contention, boiled down, is that the transportation of lumber between the points which they are authorized to serve as a public utility may nevertheless be performed by them as a nonpublic utility, and that their legal status at any particular time is a question of fact.

Respondents appear to place great reliance on *Alves* v. *Public Utilities Com.*, 41 Cal.2d 344 [260 P.2d 785], in which the Supreme Court annulled an order of the Public Utilities Commission directing Alves to cease and desist from operating as a highway common carrier between certain designated cities unless he obtained a certificate of public convenience and necessity. In that case the court said at page 350:

". . . A 'highway common carrier . . . subject to regulation as such' by the Public Utilities Commission is a highway carrier transporting 'property as a common carrier for compensation . . . between fixed termini or over a regular route.' A common carrier by auto truck which does not operate between fixed termini or over a regular route is a 'radial highway common carrier.' Thus, the difference between two possible types of common carriage is dependent upon whether it is performed 'between fixed termini or over a regular route.' The third possible type of highway carriage with which we are concerned is the 'highway contract

carrier,' defined by exclusion as every highway carrier which is not a common carrier operating between fixed termini or over a regular route. In other words, if it does not operate as a common carrier, the highway contract carrier may operate between fixed termini or over a regular route.

"Alves held permits to operate both as a radial highway common carrier and as a highway contract carrier. Thus, under the quoted statutory definitions, he legally could operate as a common carrier; he could also transport goods as a contract carrier between fixed termini or over a regular route. But he could not operate as a common carrier between fixed termini or over a regular route. The commission has entirely ignored this essential distinction. Although it found that Alves operated as a highway common carrier between fixed termini and over regular routes, it did not find that he conducted specified common carrier operations between certain fixed termini. The specific findings are simply that he operated as a common carrier and that he operated between certain fixed termini."

The court said further at page 351:

"In this case, there being no evidence of operations between fixed termini as a common carrier, application of the Stapel rule contravenes section 4 of the Highway Carriers' Act. (Stats. 1935, ch. 223, p. 878, as amended; 2 Deering's Gen. Laws [1943], Act 5129a; repealed by Stats. 1951, ch. 764, pp. 2025, 2257-2258; now Pub. Util. Code, § 3542.) It provided: 'No person or corporation shall be permitted by the Railroad Commission to engage, nor shall any person or corporation engage in the transportation of property on the public highway, both as a common carrier and as a highway contract carrier of the same commodities between the same points.' The clear implication of the statute is that a carrier may engage in both common and contract carriage, so long as the same commodities are not carried between the same points in both capacities. Whether Alves has violated the stated restriction has not been decided by the commission, and the evidence does not tend to show any such violation."

We do not regard the Alves case as an authority in support of respondents' position because Alves did not have a certificate of public convenience and necessity to operate as a highway common carrier. The basis of the court's decision was that the commission did not find that Alves conducted common carrier operations between certain fixed termini, and in view of the fact that Alves held permits as a radial highway com-

mon carrier and a highway contract carrier the court concluded that it was not shown that he violated the law by operating as a highway common carrier.

Apparently the trial court felt that the Alves case was determinative of the principal issue here involved, for in denying appellant's motion for a directed verdict and appellant's motion for a new trial the court said:

"From the decisions as I now read them, and as I now infer, I feel that the Supreme Court has put itself in this position, that they have definitely put aside the declaration of the law and have left open the question of determining in every case whether or not in fact and in truth it is a public utility or a permitted carrier operating, and if that's the way the law is to be, let's have it so, and have legislation to change it. I am going to go along with what apparently the Supreme Court has declared, namely that it is a question of fact. I am going to do that with full knowledge, certainly complete understanding, of the fact that the Supreme Court should define the law, if it is capable of definition under present legislation. Now with that, I think the best way to send it up is by this way, and I am assuming it is going up. I am going to deny your motion and that will be the order, with full understanding of your position, and frankly personally feeling as though it is a proper position too and is the way the law should be declared, but it hasn't been declared so, and I am not about to fly in the face of the appellate courts." (R.T. 269.)

"Then in full realization that, as I state it, comparatively arbitrary position I have taken—In other words, I believe the legislation is so completely uncertain, the pronouncements of it heretofore of such small assistance, that I think we are practically pioneering the law in this matter, and I have chosen for reasons satisfactory to me to arbitrarily say that it is possible for a person to be both a certificated carrier and a permitted carrier of the same product over the same route, in part, and generally between the same points. It violates some of the sense of logic that we have but that is the position I have taken. I announce that position so that the appellate court may know what position the trial court has taken." (R.T. 298.)

However, in the instant case respondents had applied for and were granted a certificate of public convenience and necessity as a highway common carrier, and the evidence is undisputed that they transported the shipments of lumber

described in the complaint between the points and over routes which they were authorized to serve under their certificate, and that although they had applicable rates for such transportation filed with the commission, they charged and collected rates other than their filed tariff rates.

We are unable to agree with respondents' contention that although they applied for and were granted a certificate of public convenience and necessity to perform the transportation as a public utility between the points set forth in the various counts of the complaint, they nevertheless could perform the transportation under the authority of their radial highway common carrier permit at rates fixed for other than certificated carriers. We do not believe that either reason or authority sustain such a contention. As stated by the trial court, to sustain such a contention "violates some of the sense of logic." A highway common carrier is one who transports property over the public highways for compensation between fixed termini or over a regular route. (Pub. Util. Code, § 213.) "Between fixed termini or over a regular route" is defined as the termini or route between or over which any highway common carrier usually or ordinarily operates even though there may be periodic or irregular departure from such termini or route. (Pub. Util. Code, § 215.) As stated in *Alves* v. *Public Utilities Com., supra,* at page 350: "A common carrier by auto truck which does not operate between fixed termini or over a regular route is a 'radial highway common carrier.' Thus, the difference between two possible types of common carriage is dependent upon whether it is performed 'between fixed termini or over a regular route.'" One cannot transport, at one and the same time, lumber and forest products between fixed termini or over a regular route (highway common carrier) and between unfixed termini or over an irregular route (radial highway common carrier) over the same route or between the same points. The two are mutually exclusive. The points and routes in the instant case were "fixed" by respondents' application for a certificate, the Public Utilities Commission's grant thereof, respondents' filing of tariffs applicable to them, and subsequent transportation between the points or over the routes.

Respondents could not, by stamping the freight bills for the transportation here involved as being charges under respondents' radial highway common carrier permit, evade the statute designed to regulate their operations as a certifi-

cated highway common carrier. In *Nolan* v. *Public Utilities Com.*, 41 Cal.2d 392, the court said at page 397 [260 P.2d 790]:

"Nolan's contention that a radial highway common carrier does not become a highway common carrier when business expansion results in regular trips to certain communities is without merit. By statutory definition, the distinction between the two types of carriers is that the highway common carrier operates between fixed termini or over a regular route whereas the radial carrier has no fixed termini or regular route. (Pub. Util. Code, §§ 213, 215, 3516; *Alves* v. *Public Utilities Com., ante,* p. 344 [260 P.2d 785].)"

Neither could the testimony of respondents that the operations between the points of origin and destination set forth in the various causes of action were irregular and infrequent avail respondents because, as hereinbefore pointed out, the points and routes in the instant case were fixed by respondents' application for a certificate, and the Public Utilities Commission's grant thereof. The topography of our state is such as to limit the routes from the northern part of the state to the southern part to two major routes and respondents must either take one or the other. Respondents testified that the precise route traveled each instance was up to the truck drivers and varied, but this could not change the status of respondents from that of a certificated highway common carrier to that of a radial highway common carrier.

■ While the issue involved in the instant case was whether in the instances here involved respondents were operating as a highway common carrier or as a radial highway common carrier, we are convinced that, under the undisputed evidence, it must be held that respondents were operating as a highway common carrier, and that, having charged rates other than the applicable tariff rates, they were guilty of the violations charged in the complaint, and were liable for the penalties provided in section 2107 of the Public Utilities Code. The court therefore erred in telling the jury that the question of "Whether the defendants operated between fixed termini or over a regular route is a question of fact to be determined by you from the evidence presented." The only issue that should have been submitted to the jury was the determination of the amount of penalties that should be imposed.

No other points raised require discussion.

The judgment is reversed with directions to the trial court

to instruct the jury to find for appellant on all of the causes of action in the amended complaint from the fourth to the seventeenth and the case is remanded for a new trial limited to the issue of the amount of penalties alone.

Van Dyke, P. J., and Peek, J., concurred.

Respondents' petition for a hearing by the Supreme Court was denied October 8, 1957.