John COSTELLO, as Trustee of the Estate of Arthur W. Baxter, Appellee,

v.

SAFEWAY STORES INCORPORATED, Appellant.

No. 23342.

United States Court of Appeals, Ninth Circuit.

Aug. 6, 1970.

Boris H. Lakusta (argued), David J. Marchant, of Graham & James, San Francisco, Cal., for appellant.

Eldon M. Johnson (argued), of Silver, Rosen & Johnson, Rothschild & Phelan, San Francisco, Cal., for appellee.

Before MADDEN,* Judge of the United States Court of Claims, and MERRILL and TRASK, Circuit Judges.

MADDEN, Judge:

Costello, as trustee in bankruptcy of the bankrupt estate of Baxter, brought this suit in the district court to collect money allegedly owed by Safeway stores to Baxter, for trucking services performed by Baxter for Safeway. Costello claims that the payments formerly made by Safeway, though they were the amounts provided for in contracts between Baxter and Safeway, were insufficient because they were less than the amounts set by California law as the minimum lawful charges for the services rendered by Baxter to Safeway.

Prior to January, 1959, Baxter was employed by a California Corporation named Liberty Freight Lines. Liberty had, in 1957, obtained from the Califor-

* Honorable J. Warren Madden, Senior Judge, United States Court of Claims, sitting by designation.

nia Public Utilities Commission a certificate of public convenience and necessity authorizing Liberty to truck certain commodities between the San Francisco area and the Los Angeles area. In the latter months of 1958, Liberty agreed to sell its entire business including its vehicles and equipment, to Baxter, effective January 1, 1959. On that date, by mutual consent, Baxter took over the business and operated it under the name of Liberty Truck Lines. The procedural steps prescribed by the California Public Utilities Commission (hereinafter PUC) for the transfer of the certificate which had been issued by the PUC to Liberty Freight Lines, were not taken at that time. But on April 29, 1959, Baxter and Liberty Freight Lines, the former owner, filed with the PUC an application for an authorization for the transfer of the equipment and certificate of Liberty to Baxter. On June 23, 1959, the PUC authorized the requested transfer, which was to be consummated by a certain date. The date was postponed by various Orders of the PUC, and was finally consummated when Baxter filed with the PUC a tariff for operations under his certificate, effective November 16, 1959. On September 30, 1960, Baxter, in the manner prescribed by law, transferred his PUC certificate to another person, thus ceasing, from that date, to hold a certificate as a common carrier.

From November 16, 1959, until September 30, 1960, Baxter, operating under the name, Liberty Truck Lines, held a PUC certificate of public convenience and necessity, and had published a tariff of charges for services to be rendered under that certificate, which tariff had been approved by the PUC.

Baxter had, on January 27, 1959, which was shortly after he began actual operation of the former Liberty Freight Lines business, obtained from the PUC a Highway Contract Carrier permit. He had, purportedly pursuant to this permit, made a contract or contracts with Safeway to carry its merchandise at prices lower than those set in Baxter's tariff on file with and approved by the PUC. It is the differences between those contract prices and the PUC tariff prices for many trucking services performed by Baxter for Safeway that constitutes the money in question in this litigation.

Safeway, relying upon language used in California reported decisions, urges that the contract prices were lawful, although they were lower than the tariff prices, because Baxter was not under a legal obligation to charge and collect the tariff prices. It says that the question whether a carrier's service is "common" or "contract" is to be determined by the intent of the carrier, and that that intent is to be determined by weighing all factors which indicate the carrier's intent. Safeway cites Samuelson v. Public Utilities Commission, 36 Cal.2d 722, 227 P.2d 256 (1951), in which case the PUC held that a carrier who held a permit to act as a contract carrier was in fact acting as a common carrier although he had no certificate to so act. The PUC ordered him to cease and desist. He served an average of 30 firms, under contracts, and had applied for a common carrier permit. The Supreme Court of California reversed the decision of the PUC, and said, at page 730, 227 P.2d at page 261:

\* \* \* the law applicable to common carriers is peculiarly rigorous, and it ought not to be extended to persons who have not expressly assumed that character, or by their conduct and from the nature of their business justified the belief on the part of the public that, they intended to assume it.

At page 733, 227 P.2d at page 262 the Court said:

\* \* \* as repeatedly stated by this court [the common law test adopted in California] requires an unequivocal intention to dedicate property to a public use.

Safeway cites several California cases subsequent to Samuelson, similar in

their facts to that case, and similarly decided.[1]

The district court considered separately three periods in the history of the hauling service which Baxter rendered to Safeway. The first, called "the early period" extended from April 24, 1959, the date when Baxter began to haul for Safeway until November 16, 1959, the date of Baxter's receipt from the PUC of a certification as a common carrier, and his publication of a tariff of rates to be charged for his services as such a carrier.

The second period, called the "intermediate" period, extended from November 16, 1959, to September 30, 1960, on which latter date Baxter, with the consent of the PUC transferred his common carrier certificate to another person and thereby disqualified himself from operating thereafter as a common carrier.

The third period included in Costello's complaint was the period after September 30, 1960, and extending to December 26, 1961. During this period Baxter continued to haul for Safeway, at the contract prices set in their agreements, which prices were lower than the prices set by the PUC for common carriers. As to this third period, the district court rejected the trustee's claim, the trustee has not appealed from that rejection, and we have no concern with that problem.

■ We consider now the first period. We have quoted hereinabove language from the *Samuelson* opinion of the Supreme Court of California, which is so specifically relevant to this first period that it will bear repetition:

\* \* \* the law applicable to common carriers is peculiarly rigorous, and it ought not to be extended to persons who have not expressly assumed that character, or by their conduct and from the nature of their business justified the belief on the

part of the public that they intended to assume it.

This court, in the case of Smith Canning and Freezing Co. v. Lloyd Krause, Inc., 398 F.2d 128, 132 (1968) expressed views similar to those of the Supreme Court of California as to the "peculiarly rigorous" status of a carrier who falls within the scope of regulations of a public agency. We said:

Having decided that the rate fixed by the Public Utilities Commissioner was the only lawful rate for the hauling here involved, we find it unnecessary to discuss the questions raised by the defendant concerning the parol evidence rule, rules relating to discharge, performance, release, abrogation, payment, accord and satisfaction, waiver or estoppel. None of these doctrines is effective to legalize a departure from a rate fixed by an official body authorized by statute to prescribe rates.

During the first period, April 24, 1959, to November 15, 1959, here under discussion, Baxter had no PUC certificate to operate as a common carrier. He had, from January 27, 1959, a Highway Contract Carrier permit, granted to him by the PUC. Pursuant to that permit he entered into contracts with Safeway at rates which were lower than the allowable minimum common carrier rates but were above the allowable minimum contract carrier rates. During this period Baxter operated in compliance with his PUC permit to be a contract carrier. If he had purported to operate as a common carrier, he would have violated the law forbidding one to operate as a common carrier without first obtaining from the PUC a certificate authorizing him to do so.

The trustee, Costello, claims that Baxter, during this first period, was bound by the legal requirements and rates applicable to a common carrier. We think

1. Souza v. Public Utilities Commission, 37 Cal.2d 539, 233 P.2d 537 (1951); Alves v. PUC, 41 Cal.2d 344, 260 P.2d 785 (1953); Talsky v. PUC, 56 Cal.2d 151, 14 Cal.Rptr. 325, 363 P.2d 341 (1961); Nolan v. PUC, 41 Cal.2d 392, 260 P.2d 790 (1953).

Costello's contention is contrary to the emphatic and repeated expressions of the Supreme Court of California whose expressions of law are controlling in this case. The district court held that Baxter was obligated, during this early period, to charge common carrier rates. The court cited Keller v. Thornton Canning Co., 66 Cal.2d 963, 59 Cal.Rptr. 836, 429 P.2d 156 (1967). In that case the carrier purported to act as a radial highway common carrier, but had failed to obtain a PUC authorization to so act. The Supreme Court of California held that the carrier was bound by the PUC's rate orders affecting radial carriers, that his negligent failure to obtain the necessary PUC authorization did not relieve him of the obligation. Baxter applied on April 29, 1959, for a common carrier certificate and asked that the certificate when granted, be made retroactive to January 1, 1959. The PUC refused to make the certification retroactive, and it was not actually granted until November 16, 1959, and, when granted, was not made retroactive. Baxter had not, before that date, acted or purported to act as a common carrier. We think the Thornton Canning Co. case is not controlling, and that the district court was in error in allowing recovery to the trustee, Costello, for the "early period."

As to the intermediate period, extending from the date when Baxter received his certification as a common carrier to the date when he, with authorization from the PUC transferred the certification to another person, the district court held, we think correctly, that Baxter was a common carrier during that period and was obligated to charge and collect the rates fixed in his filed tariff. The language of the Samuelson case, quoted *supra*, is directly in point. The Supreme Court of California said in Samuelson regarding the "peculiarly rigorous" nature of the law applicable to common carriers that "it ought not to be extended to persons who have not expressly assumed that character, or * * *". In the instant case Baxter,

at the beginning of the intermediate period, "expressly assumed that character" in the plainest possible language. There is no claim that he did not know what he was saying. Nothing but confusion could result from a doctrine that such an unequivocal assumption of a status, crucial to the orderly administration of the law of public utilities, may depend for its effect upon future events such as a change of the party's mind, or the fact that no substantial number of customers sought the services which he had held himself out to offer. The district court was right in holding that Baxter was, during the intermediate period, a certificated common carrier, and that he was legally obligated to charge, and his customer Safeway was obligated to pay, the rates set in Baxter's filed tariff as a common carrier.

We affirm the district court's judgment as to the intermediate period. The judgment will be modified by eliminating any recovery by the plaintiff for services rendered by Baxter during the period from April 24, 1959, to November 16, 1959.