SMITH CANNING & FREEZING CO., a corporation, Appellant,

v.

LLOYD KRAUSE, INC., a corporation, Appellee.

No. 22091.

United States Court of Appeals Ninth Circuit.

July 19, 1968.

Harold A. Fabre, (argued) of Fabre, Collins & Ehlers, Pendleton, Or., for appellant.

George H. Corey, (argued) of Corey, Byler & Rew, Pendleton, Or., Lyon, Beaulaurier & Aaron, Yakima, Wash., for appellee.

Before MADDEN, Judge of the United States Court of Claims; DUNIWAY, Circuit Judge; and WEIGEL, District Judge.

MADDEN, Judge:

In this case, which was tried in the United States District Court for the District of Oregon because of diversity of citizenship, judgment was rendered for the plaintiff, a Washington corporation, against the defendant, an Oregon corporation. The defendant, Smith Canning and Freezing Co., has appealed the case to this court.

The plaintiff's suit was for its services in hauling pea vines which had been cut on the defendant's land in Oregon and raked into windrows on the land. From the windrows they were loaded into the plaintiff's trucks and hauled by the plaintiff to the defendnt's processing plant, also in Oregon, where the peas were separated from the vines and then from the pods. The plaintiff performed this hauling service for the defendant for many years, each year during the short season of about six weeks during which peas were at the right stage of maturity for canning or freezing.

The suit here involved was based upon the plaintiff's claim that the defendant paid the plaintiff, for the hauling service, less than the amount called for by annual contracts between the plaintiff and the defendant, which contracts were filed with and approved by the Commissioner of the Public Utilities Commission of the State of Oregon. The plaintiff was not a common carrier and did not have a common carrier's license. It was licensed as a "contract carrier." The Oregon statutes provided for regulation of contract carriers as well as common carriers. ORS 767.105 provided:

* * * (1) No person shall operate any motor vehicle, whether loaded or empty, on any highway in this state as a common carrier, contract carrier or private carrier in the transportation of persons or property or both without first applying for and obtaining * * * a permit from the commissioner covering the proposed operation.

The plaintiff and the defendant recognized that the plaintiff was a contract carrier and that it was necessary for it to obtain a permit for its hauling for the defendant. An application for such a permit was made, for each year's hauling season, which application stated the rate per truck per hour which the plaintiff was to receive. The first application so presented to the Commissioner specified the rate which the plaintiff and the defendant had agreed upon by negotiation with each other. The Commissioner rejected this application on the ground that the rate stated in the contract was too low. Then the plaintiff and the defendant wrote and signed a new contract which stated the rate which the Commissioner had named as the lowest rate which he would approve, and the Commissioner approved the contract and granted the permit to the plaintiff to haul for the defendant, as a contract carrier, at the rate set in the new contract.

When the parties wrote and signed the new contract, they did so only for the purpose of obtaining the approval of the Commissioner. They did not intend to carry out the contract at the rates stated therein. They intended that the defendant, the shipper, should pay, and the plaintiff, the carrier, should receive only the lower rates which the parties had negotiated and the Commissioner had rejected as too low when they were submitted to him. After each week's hauling, the carrier submitted his itemized bill for the week, at the rates which the parties intended to be the actual rates, and the bill was paid, the circumstances and the documents indicating the intent of the parties that the payment was payment in full.

In the succeeding years, when the carrier applied for his permit, he presented a contract containing the higher rates which the carrier knew that the Commissioner would approve, but which the carrier and the shipper did not intend to demand nor pay. After this practice had continued for many years, the carrier demanded the difference, for the six years for which such a claim was not barred by the statute of limitations, between what it had received and what it would have received if payments had been made to it at the rates set in the contracts on file with and approved by the Public Utilities Commissioner. That difference, for the six years not barred by the statute of limitations, was $66,-593.28. The plaintiff's demand for the payment of this sum was rejected by the defendant, suit was brought for that amount in an Oregon state court, the case was removed, on the defendant's motion based on diversity of citizenship, to the United States District Court. Judgment was rendered for the plaintiff and this appeal followed.

The defendant concedes that the Commissioner of the Public Utilities Commission of Oregon has the power to regulate contract carriers, such as the plaintiff, including the power to require them to file their contracts with the Commission. But the defendant says that, by the express terms of the pertinent Oregon statute, the Public Utilities Commissioner was denied the authority to fix rates for the hauling of the pea vines in the circumstances of the instant case. The statute relied on by the defendant is paragraph (4) of ORS 767.-420. The entire section relates to "contract carriers, regulation of." Paragraph (4) says:

The commissioner has jurisdiction over said rates, fares, charges and practices to the same extent as is required by ORS 767.410, in the case of common carriers, and ORS 767.410 is by this reference made applicable to contract carriers and the commissioner shall apply and enforce the same accordingly; provided, the commissioner has no authority to fix rates on agricultural, horticultural, poultry, dairy, livestock, timber or livestock products in the transportation from the point of origin to packing or processing plants, or from the point of origin or from packing or processing plants to the nearest market or shipping points, when not transported in

competition with common carriers or railroads.

The defendant relies on the language of the paragraph beginning with the words "provided, the commissioner has no authority" and continuing to the end of the paragraph.

The pea vines were, of course, agricultural products that were being hauled from the point of origin to the processing plant. But even so, according to the plain language of the statute just above quoted, the Commissioner had authority to fix the hauling rates if the pea vines were being transported in competition with common carriers. The defendant recognizes this and argues that the transportation was not in competition with common carriers.

■ We think the defendant's contention is not supported by the record. The question of competition was explored in detail at the trial. Mr. Singleton, the Director of Transportation for the State of Oregon, testified at length on the subject. He read into the record paragraph (2) of ORS 767.420, which says:

No contract carrier shall give or cause any undue or unreasonable advantage or preference to those whom he serves as compared with patrons of any common carriers, or subject the patrons of any common carrier to any undue or unreasonable discrimination or disadvantage, or by unfair competition destroy or impair the service or business of any common carrier or the integrity of the state's regulation of any such service or business.

The obvious purposes of the statute are to prevent contract carriers from undercutting the rates of common carriers, thus depriving common carriers of business, and also to prevent shippers who use contract carriers from getting an economic advantage over their business competitors who use common carriers by getting their hauling done for less than their competitors pay.

The defendant says that in fact and in reality there were no common carriers in the area who hauled pea vines or who held themselves out as being willing and equipped to haul pea vines. But Mr. Singleton testified that there were several common carrier truckers, which he named, licensed to haul general commodities, unrestricted, in Umatillo County, Oregon, the county here involved. He named one common carrier trucker, one of whose licenses was specifically limited to hauling peas, vines, and peas on the vines. He testified that there were, among the voluminous rate tariffs of the commission, tariff rates for hauling pea vines.

■ We think that the defendant's statement that no common carrier did, in fact, haul pea vines, if true, is irrelevant. The defendant obviously was not calling on common carriers to haul pea vines for it, since it had its secret arrangement with the plaintiff under which it was getting its hauling done for less than a common carrier would have had to charge. Other producers of peas may have had similar secret agreements, or may have done their own hauling, which would not have involved rate-fixing by the Commission. The Oregon Public Utilities Commissioner gave the only practicable interpretation to the applicable statutes when he held that goods are transported by a contract carrier in competition with a common carrier if there is a common carrier who holds a license to transport that kind of goods.

■ We conclude, as did the district court, that the proviso contained in paragraph (4) of ORS 767.420 is not applicable to this case, since the proviso is nullified by the last clause of the paragraph.

The Oregon statute, ORS 756.580, provides that a party aggrieved by any order of the Public Utilities Commission may have the order reviewed by a circuit court of Oregon. Because we hold that the Commissioner's action was valid, we do not consider the question of whether, if it were invalid, it could be collaterally attacked as the defendant seeks to do in the instant case.

The Supreme Court of the United States, in Louisville & Nashville Railroad Co. v. Maxwell, 237 U.S. 94, 35 S. Ct. 494, 59 L.Ed. 853 (1915), said:

Under the interstate commerce act, the rate of the carrier duly filed is the only lawful charge. Deviation from it is not permitted upon any pretext. Shippers and travelers are charged with notice of it, and they as well as the carrier must abide by it, unless it is found by the Commission to be unreasonable. Ignorance or misquotation of rates is not an excuse for paying or charging either less or more than the rate filed. This rule is undeniably strict and it obviously may work hardship in some cases, but it embodies the policy which has been adopted by Congress in the regulation of interstate commerce in order to prevent unjust discrimination * *

Federal cases applying the doctrine of the above quoted opinion are legion, striking down departures from the lawful rate, which departures have occurred in a great variety of circumstances ranging from collusion between shipper and carrier, as in the instant case, to innocent mistake. We do not cite the cases, but they all refuse to tolerate any variation from the lawful rate. In several cases decided by the Supreme Court of Oregon involving rates fixed under the federal statutes relating to interstate commerce, the court has applied the same rule striking down departures from legally fixed rates. The most recent of those cases is Oregon-Washington R. & N. Co. v. Cascade Contract Co., 101 Or. 582, 197 P. 1085, 200 P. 1034 (1921).

We can think of no reason why the Supreme Court of Oregon, if the instant case had been litigated in the state courts of Oregon, would not give to Oregon's own statutes, which are similar in pertinent regards to the federal statutes, the same interpretation which it gave to the federal statute in Cascade Contract Co., supra.

Having decided that the rate fixed by the Public Utilities Commissioner was the only lawful rate for the hauling here involved, we find it unnecessary to discuss the questions raised by the defendant concerning the parol evidence rule, rules relating to discharge, performance, release, abrogation, payment, accord and satisfaction, waiver or estoppel. None of these doctrines is effective to legalize a departure from a rate fixed by an official body authorized by statute to prescribe rates.

The judgment of the district court is affirmed.