[S.F. No. 23473. Mar. 24, 1977.]

CALIFORNIA TRUCKING ASSOCIATION, Petitioner, v.
PUBLIC UTILITIES COMMISSION, Respondent.

**COUNSEL**

Richard W. Smith, Paul Biancardi and Arlo D. Poe for Petitioner.

Richard D. Gravelle, J. Calvin Simpson and John S. Fick for Respondent.

**OPINION**

**MOSK, J.**—In a proceeding initiated by the Public Utilities Commission (commission), minimum rates which had been previously set for the transportation of certain commodities were cancelled. Prior to that action, parties affected by the proposed ruling were afforded the opportunity to comment thereon. California Trucking Association[1] requested a hearing on the matter, but the commission refused. California Trucking asserts that the commission was required to grant its request for a hearing and is required by statute to maintain minimum rates for transportation of the commodities in question.

---

[1]The association (hereinafter California Trucking) is a nonprofit corporation the membership of which includes companies engaged in the for-hire transportation of property and subject to regulation by the commission.

On September 12, 1976, the commission issued a "white paper" which contained a proposal from its staff that the transportation of flattened automobile bodies by motor carrier be exempted from minimum rates previously established by the commission. The announced reasons for the recommendation were that there was only a limited demand for such transportation, that few carriers were engaged in hauling flattened automobile bodies, and that the exemption proposed would not lead to disruptive rate practices.

A copy of the report was sent to various "interested parties," including California Trucking, with a letter soliciting comments and suggestions, and declaring that in the absence of substantial objection, but subject to possible modifications suggested by the parties, it would be recommended to the commission that the revision be adopted as an ex parte order. California Trucking protested in writing that the commission was required by law to set minimum rates, and objected to the "suggested ex parte handling" of the matter and to "the public interest representations of the staff." Subsequently the commission, in Decision No. 85585, adopted the exemption recommended by its staff.

Substantially the same procedure was followed with respect to the exemption from minimum rates of empty sea vans. The exemption was recommended on the ground that the transportation characteristics of such vans differ considerably from those of general commodities. California Trucking objected to the proposed exemption on the same grounds it had previously advanced with respect to flattened automobile bodies, and demanded a hearing. In Decision No. 85584, the commission adopted the proposal and ordered that the rates be cancelled.[2] Thereafter, it denied California Trucking's petition for reconsideration of the orders cancelling minimum rates.

I

We consider first whether, in cancelling the rates previously set, the commission was required to hold a hearing at the request of California Trucking.

The determination of this issue turns upon the construction of the statutes governing the authority of the commission. Section 1708 provides in part, "The commission may at any time, upon notice to the

---

[2]These decisions were implemented in part by Decisions Nos. 85586 and 85587.

parties, and with opportunity to be heard as provided in the case of complaints, rescind, alter, or amend any order or decision made by it. . . ."[3] The commission asserts that a "trial type hearing" is not required, and that the opportunity to comment upon a proposal of the staff satisfies the command of section 1708 that a prior order be altered only after "opportunity to be heard."

We cannot agree with this contention. The phrase "opportunity to be heard" implies at the very least that a party must be permitted to prove the substance of its protest rather than merely being allowed to submit written objections to a proposal. The recommendation to cancel the rates was based upon factual determinations made by the staff of the commission, i.e., the peculiar characteristics of the transportation of the commodities in question and the need for regulation of their rates. The challenge of California Trucking to the conclusions of the staff report included an objection to "the public interest representations of the staff." Under these circumstances equation of permission to merely protest in writing with the requirement of section 1708 that there be afforded an "opportunity to be heard" clearly cannot be rationalized.[4] In a case involving a virtually identical Colorado statute, it was held that the opportunity to file a protest did not comport with the statutory requirement for an "opportunity to be heard." (*Consolidated Freight. Corp. of Del.* v. *Public U. Com'n.* (1965) 158 Colo. 239 [406 P.2d 83, 90].)[5]

Moreover, section 1708 provides that when the commission alters or rescinds a prior order the opportunity to be heard must be afforded "as provided in the case of complaints." The procedure applicable to

[3]All statutory references in this opinion are to sections of the Public Utilities Code.

[4]At oral argument, the commission cited *Phillips Petroleum Co.* v. *Federal Power Com'n.* (10th Cir. 1973) 475 F.2d 842, 848-851, which holds that, although the Natural Gas Act requires the Federal Power Commission to hold a hearing in fixing rates, a rule by that agency which allows a party only the opportunity to submit written material does not violate the act. The court relied primarily upon a decision of the United States Supreme Court which emphasized the necessity of streamlining administrative methods in rate fixing and allowed the determination of rates through group or class proceedings. The decision does not squarely meet the contention of the petitioner that a "hearing," as required by the act, means a proceeding at which a party may appear and exercise such rights as the opportunity for cross-examination, but merely assumes under certain circumstances that these rights may be dispensed with. In any event, *Phillips* is concerned with a federal act and is thus not persuasive authority.

[5]The issues in that case were remarkably similar to those involved here. There, also, the public utilities commission cancelled prior rates without a hearing, and the issues were whether the statutes required the commission to retain minimum rates and whether a hearing was required prior to the cancellation of rates. The court held that under the statutes applicable there, minimum rates were mandatory.

hearings on complaints filed by the commission on its own motion, as occurred here, is prescribed in sections 1701-1706. Section 1705 requires a hearing at which parties are entitled to be heard and to introduce evidence, and the commission must issue process to enforce the attendance of witnesses.[6]

The commission points out that it has modified minimum rates many times in the past without a trial-type hearing, and relies upon the general proposition that consistent administrative construction of a statute is entitled to great weight and will not be overturned unless clearly erroneous. (*City of Los Angeles* v. *Public Utilities Com.* (1975) 15 Cal.3d 680, 696 [125 Cal.Rptr. 779, 542 P.2d 1371].) The commission cites a number of its decisions in this connection, but it does not indicate whether in those matters a hearing was requested by any of the parties asked to comment on proposed actions by the commission. If no party seeks to challenge a proposed order except by merely submitting written comments on its merits, the commission is not required to hold a hearing. In any event, the statutory provisions in section 1708 are so clear as to the necessity for a hearing that the commission's consistent failure to grant hearings in prior cases cannot be deemed determinative.[7] In view of this conclusion, it is not necessary to consider the assertion of California Trucking that it was entitled to a hearing under the due process guarantees of the federal and state Constitutions.

California Trucking also contends that it was deprived of notice by the "white paper" procedure adopted by the commission. Its real complaint in this regard does not appear to be that it failed to receive notice of the proposed change but that other carriers which might have been interested in the proceeding were not notified by publication or otherwise. Since California Trucking had notice of the proposed action,

[6]Section 1707 authorizes the commission to hear a complaint ex parte if the complaint is filed by a public utility, but, as stated above, since the present proceeding was instituted by the commission, the provisions of sections 1701 to 1706 are applicable and 1707 is inapposite.

[7]The commission asserts that a holding that a hearing is only required if one is requested would mean that the Legislature has delegated the right to require trial-type hearings to private litigants. However, there is nothing remarkable in the concept that one who is entitled to a hearing may waive his right thereto by failing to assert it.

Another contention of the commission is equally unmeritorious. It implies that if we hold that section 1708 requires a hearing where one is requested prior to the modification of a minimum rate previously promulgated, prior orders of the commission modifying such rates without hearing would be rendered unlawful. It is obvious, however, that the failure of parties to request a hearing or to seek review of the commission's refusal to grant that right waives any error in this regard, and that decisions of the commission which are now final are not affected by our holding.

we need not decide whether the notice was defective as to other parties who are not before us with a claim that they were improperly deprived of notice.[8]

## II

 We consider next the argument of California Trucking that the commission must maintain minimum rates in effect under the provisions of section 726. That section provides in part, "In any rate proceeding where more than one type or class of carrier . . . is involved, the commission shall consider all such types or classes of carriers, and . . . fix as minimum rates . . . the lowest of the lawful rates so determined for any such type or class of carrier. . . ."[9]

 Section 3662 provides, "The commission shall . . . establish or approve just, reasonable, and nondiscriminatory maximum or minimum or maximum and minimum rates to be charged by any highway permit carrier for the transportation of property . . . ."

California Trucking appears to concede that under the provisions of section 3662, the commission is vested with discretion to determine whether or not to establish minimum rates to be charged by highway permit carriers. Since the section provides that the commission may set either maximum *or* minimum rates, it cannot be said that it mandates the commission to set minimum rates under all circumstances.[10]

 But, insists California Trucking, the terms of section 726 are mandatory in character, requiring the commission to set minimum rates whenever more than one type or class of carrier is involved in a rate proceeding. Therefore, since the cancelled rates involve more than one type of carrier; section 726 is applicable and the commission must promulgate or retain minimum rates for flattened automobile bodies and

---

[8]Nor is it necessary to consider the argument of California Trucking that the notice afforded to it by the commission was defective in various respects. These assertions were either not raised before the commission in the petition for reconsideration or the deficiencies alleged will be substantially corrected by our holding that section 1708 requires the commission to hold a hearing in the circumstances presented here.

[9]The commission does not dispute the assertion of California Trucking that more than one type of carrier is involved in the transportation of flattened automobile bodies and empty sea vans.

[10]Nor can it be argued that the provision requires the setting of maximum rates where minimum rates are inappropriate. The thrust of the section is to allow the commission to set either type of rate, or no rate at all.

empty sea vans. The commission, on the other hand, interprets section 726 as merely setting forth the test to be applied when minimum rates are set, rather than as requiring the commission to set such rates.

In our view, the commission's construction of section 726 is correct. The provision that the commission shall fix "as" the minimum rate the lowest of the lawful rates implies the standard by which minimum rates are to be determined rather than the requirement that such rates be set. California Trucking provides no policy justification for interpreting the section so as to require the setting and maintenance of minimum rates in all circumstances. In the present proceeding, for example, if, as the report of the commission's staff indicates, the exemption of flattened automobile bodies would not lead to destructive rate practices, there seems little justification to require the commission to set minimum rates for the transportation of such commodities. (See *Cal. Mfrs. Assn.* v. *Public Utilities Com.* (1954) 42 Cal.2d 530, 534 [268 P.2d 1].)

Prior decisions of the commission are consistent with its present position. Thus, in the very proceeding in which statewide minimum rates for highway common carriers were first established, some commodities were exempted from the regulations "due to the peculiarities attending the transportation thereof." (Establishment of Minimum Rates (1938) 41 C.R.C. 671, 708.) In other decisions the commission has refused to establish minimum rates because the record failed to demonstrate "an obvious or persuasive need in the public interest" and the establishment of such rates would not have a meaningful effect on the transportation involved (Minimum Rate Tariff No. 16 (1966) 65 Cal. P.U.C. 730, 740), or because the public interest did not require the establishment of minimum rates (*Highway Carriers Association* v. *Public Utilities Com.* (1972) Dec. No. 80134).

The contention of California Trucking that these decisions are distinguishable because they involve the refusal by the commission to establish minimum rates for a particular commodity rather than, as here, the cancellation of rates previously established, is without merit in interpreting section 726. If, as California Trucking argues, the commission has a mandatory duty to set minimum rates under the section, then that duty would apply equally to the initial establishment of rates and their cancellation.[11]

---

[11]California Trucking also relies upon a statement in *Cal. Mfrs. Assn.* v. *Public Utilities Com., supra,* 42 Cal.2d 530, 534, that sections 726, 3662, and other provisions of the Public Utilities Code, considered together, establish "a pattern of rate regulation

We conclude that the commission, under existing statutes, is not required to set minimum rates for the transportation of flattened automobile bodies or empty sea vans. However, the commission erroneously denied California Trucking an opportunity to be heard as required by law.

The orders of the commission are annulled.

Tobriner, Acting C. J., Clark, J., Richardson, J., Sullivan, J.,* and Draper, J.,† concurred.

---

guaranteeing to all carriers the right to compete with each other on equal terms but subject to minimum rates developed for the type or class of carrier best suited economically to perform a particular service." That case was concerned with whether the commission had employed the proper method in calculating a minimum rate, and it did not discuss whether the commission was compelled to set such a rate.

*Retired Associate Justice of the Supreme Court sitting under assignment by the Chairman of the Judicial Council.

†Assigned by the Chairman of the Judicial Council.