[S. F. No. 20761. In Bank. Mar. 1, 1962.]

GOLDEN GATE SCENIC STEAMSHIP LINES, INC. et al., Petitioners, v. THE PUBLIC UTILITIES COMMISSION, Respondent; RUSSELL G. LEWIS, Real Party in Interest.

Reginald L. Vaughan and Herman F. Selvin for Petitioners.

Gibson, Dunn & Crutcher, Max Eddy Utt and William F. Spalding as Amici Curiae on behalf of Petitioners.

William M. Bennett, Chief Counsel, Roderick B. Cassidy, Assistant Chief Counsel, Mary Moran Pajalich, Senior Counsel, and Donald B. Day for Respondent.

Graham, James & Rolph, Boris H. Lakusta and Raymond A. Greene, Jr., for Real Party in Interest.

Vaughan, Brandlin, Robinson & Roemer and James H. Lyons as Amici Curiae on behalf of Respondent and Real Party in Interest.

McCOMB, J.—Petitioners (Harbor Tours, Inc., and Golden Gate Scenic Steamship Lines, Inc.) seek to obtain annulment of an order of the Public Utilities Commission which found that they had violated section 1007 of the Public Utilities Code by operating, or causing to be operated, vessels for the transportation of persons for compensation between points in this state without first obtaining from the commission a certificate of convenience and necessity. The commission on its own motion had ordered an investigation into the operations and practices of petitioners.

*Facts*: Petitioners operate sight-seeing vessels that take on passengers at a San Francisco wharf, travel in a continuous loop around the bay, and return to the point of origin. There is no suggestion that the purpose of these voyages is to carry persons or property from one place to another. It is admitted that their only function is to provide a unique means of viewing San Francisco and the Bay Area.

This is the sole question necessary for us to determine: *Does the commission have authority, under section 1007 of the Public Utilities Code, to require a certificate of public convenience and necessity for the operation of petitioners' vessels?*

*No.* Section 1007 of the Public Utilities Code provides in part as follows: "No corporation or person shall begin to operate or cause to be operated any vessel for the transportation of persons or property, for compensation, *between points in this State,* without first having obtained from the commission a certificate declaring that public convenience and necessity require such operation. . . ."[1]  (Italics added.)

Petitioners do not operate between points. They embark passengers upon a vessel at one point—a dock in San Francisco —carry them in a loop around the bay without touching or stopping at any other point; return to the point of embarkation; and there discharge the passengers.

Under settled rules of statutory construction, it appears that the phrase "between points in this State" is not merely a reference to the territorial extent of operation, as

---

[1]The movement contemplated by section 1007 is movement upon water in this state. The nature of the contemplated movement is particularized in section 211, subdivision (b), of the Public Utilities Code. That section provides that a "common carrier" includes anyone who operates a "vessel engaged in the transportation of persons or property for compensation between points upon the inland waters of this State or upon the high seas between points within this State. . . ."

held by the commission,[2] but is a description of the kind or type of movement or carriage to which the section applies.

■ It cannot be assumed that the Legislature intended the words ''between points'' to be merely ''surplusage, or . . . a repetition of a provision already made'' in the statute. (*Gates* v. *Salmon,* 35 Cal. 576, 587 [95 Am.Dec. 139].) If reasonably possible, the phrase must be given a meaning that will make of it something more than only an unnecessary and tautological addition to the act. (*People* v. *Western Air Lines, Inc.,* 42 Cal.2d 621, 638 [27] [268 P.2d 723] ; *Weber* v. *County of Santa Barbara,* 15 Cal.2d 82, 86 [4] [98 P.2d 492].)

[2]The commission has on numerous occasions taken the position that vessel loop sight-seeing service falls under section 1007 of the Public Utilities Code. (See *Russell G. Lewis,* 56 Cal. P.U.C. 796; *Frank E. Hubaty (Victor Lee Boat Co.),* 56 Cal. P.U.C. 694; *Dal Grettenberg,* 56 Cal. P.U.C. 401; *Shearwater, Inc.,* 55 Cal. P.U.C. 235; *Star & Crescent Boat Co.,* 54 Cal. P.U.C. 64; *California Inland Water Carriers' Conference* v *Peterson,* 40 C.R.C. 353.)

However, this is the first time the matter has been presented to this court, and the following rules are here applicable: (1) The construction of statutes is a judicial, not an executive or administrative, function. (*Social Security Board* v. *Nierotko,* 327 U.S. 358, 369 [66 S.Ct. 637, 643, 90 L.Ed. 718, 727, 162 A.L.R. 1445] ; *California Emp. etc. Com.* v. *Payne,* 31 Cal.2d 210, 213 [1] [187 P.2d 702].) (2) Contemporaneous construction by officials charged with the administration of a statute, though given great weight, may not be applied when the wording of the statute, as in the present case, clearly calls for a different construction. (*Johnston* v. *Board of Supervisors,* 31 Cal.2d 66, 74 [7] et seq. [187 P.2d 686].) (3) An erroneous administrative construction does not become decisive of the law no matter how long it is continued. (*Trabue Pittman Corp.* v. *County of Los Angeles,* 29 Cal.2d 385, 399 [10] [175 P.2d 512]; *Whitcomb Hotel, Inc.* v. *California Emp. Com.,* 24 Cal.2d 753, 757 [2] [151 P.2d 233, 155 A.L.R. 405]; *California Drive-in Restaurant Assn.* v. *Clark,* 22 Cal.2d 287, 294 [9] [140 P.2d 657, 147 A.L.R. 1028].)

It is interesting to note that this is the first time the matter could have been presented to this court. In each of the prior cases in which the commission took the position that vessel loop sight-seeing service falls under section 1007 of the Public Utilities Code, the sight-seeing vessel operator had applied for a certificate of convenience and necessity and accepted it when it was issued. As a result, the operator had dedicated his service to public use and submitted to the jurisdiction of the commission. (*Palermo L. & W. Co.* v. *Railroad Com.,* 173 Cal. 380, 384 [160 P. 228]; *Franscioni* v. *Soledad Land & Water Co.,* 170 Cal. 221, 227 [149 P. 161].) Having received the certificate which he sought, he was not in a position to complain of the decision giving it to him. (*Cf. Marin M.W. Dist.* v. *North Coast W. Co.,* 178 Cal. 324, 327 et seq. [173 P. 473].)

The present case, on the other hand, arose out of an investigation on the commission's own motion, petitioners having neither applied for nor accepted a certificate of convenience and necessity. Accordingly, for the first time since section 1007 was adopted there is a party free to raise in this court the question of the true meaning of that section.

As the commission has construed section 1007, the critical phrase "between points" is rendered "surplusage, or . . . a repetition of a provision already made" in it. Under such a construction, section 1007 would apply to any transportation for compensation on waters within this state, even though that transportation was not between points. The section would have that meaning even if the words "between points" were eliminated. It would then read and thus apply to any "transportation of persons or property, for compensation . . . in this State. . . ."

It is clear that the words "between points" were intended to give the statute a meaning different from the one it would have without them. Unless that is so, the words serve no useful purpose.

■ The words show the legislative intention to make the statute applicable, not to all operations of a vessel in this state, but just to those operations in this state that consist of movement or carriage between two points or places.

■ The legislative history of the section, as well as the context in which the critical language is found in section 1007, demonstrates that the word "points" is used in the sense of "places" or "termini."

The certification requirement for vessels first came into our law in 1923. In that year the Legislature provided that for operation of a vessel "between points exclusively on the inland waters of this state . . ." a certificate of public convenience and necessity was needed. (Stats. 1923, ch. 387, p. 836.) It was also provided that upon hearing an application for such a certificate the commission had power to "issue said certificate, as prayed for, or to refuse to issue the same, or to issue it for operation *between certain points only.*" (Italics added.) (Stats. 1923, ch. 387, p. 836.) This provision is still in the statute. (Pub. Util. Code, § 1007.)

The words "between certain points" in the last quoted clause were not merely a reference to territorial extent; and, just as plainly, the word "points" in that clause was used in the sense of "places" or "termini." There is no reason to believe that this word, used in the immediately preceding clause to define the kind of operation for which a certificate is needed, was used in a different sense from the one it has in the immediately succeeding clause defining the kind of certificate that can be issued. (*Hoag* v. *Howard,* 55 Cal. 564, 565; *Corey* v. *Knight,* 150 Cal.App.2d 671, 680

■ [310 P.2d 673]; *Burton E. Green Inv. Co.* v. *McColgan,* 60 Cal.App.2d 224, 233 [4] [140 P.2d 451].)

Those defining clauses are still in the statute, but in 1933 the statute was amended to delete the words "exclusively on the inland waters of" and substitute the word "in," so that the section would read, as it still does, "between points in this State." (Stats. 1933, ch. 784, p. 2091.) The word "points" was in the statute in 1923. It is still in it. In 1923 it meant places or termini, as we have shown. It still has the same meaning.

It is to be noted that the section contains a "grandfather clause." The section provides that any corporation or person operating a vessel "between points in this State" must obtain a certificate of public convenience and necessity; but the grandfather clause goes on to provide that "no such certificate shall be required as to *termini* between which any such corporation or person" was lawfully operating a vessel on August 17, 1923, that is, on the effective date of the original enactment.[3] (Italics added.) (Pub. Util. Code, § 1007.)

■ The purpose of a grandfather clause is to give those engaged in a business being brought under regulation the right to continue their existing business without being subjected to certification requirements that would be applicable if the business were then being started for the first time. (*Golden Gate Ferry Co.* v. *Railroad Com.,* 204 Cal. 305, 312 [268 P. 355]; *State* ex rel. *Krausmann* v. *Streeter,* 296 Minn. 458 [33 N.W.2d 56, 59 [4-6], 4 A.L.R.2d 662]; *cf. Barrett Line* v. *United States,* 326 U.S. 179, 192 [65 S.Ct. 1504, 89 L.Ed. 2128].)

■ To find that the exemption from certification thus given to those already in the field was substantially narrower than the newly imposed requirement for entry into the field would be anomalous. The grandfather clause in section 1007 was undoubtedly intended to serve the office usually served by such clauses. It was made applicable to "termini between which" corporations and persons were then operating, the interpretive inference being plain that "termini between which" and "between points" in the immediately preceding part of the sentence were believed and intended to be equiva-

---

[3]As originally enacted, the grandfather clause was to the effect that no certificate was required of those "actually operating . . . between points exclusively on the inland waters of this state. . . ." (Stats. 1923, ch. 387, p. 836.)

lents. That inference is fortified by a comparison of the certification provision with the grandfather clause as the two were originally enacted. The relevant language was identical. (Stats. 1923, ch. 387, p. 836.)

"Terminus" is not a word of territorial extent. It is a word connoting the end of a transportation line. (*Nolan* v. *Public Utilities Com.*, 41 Cal.2d 392, 397 [8] [260 P.2d 790].)

"Points," as used in section 1007, is the equivalent of "termini." It thus follows that to meet the statutory limitation to "transportation . . . between points" there must be two or more ends-of-the-line, stations, towns, or places between which the vessel operates. No operation of that kind was or is being carried on by petitioners.

A key word in section 1007 is "transportation." This word has been judicially defined as implying "the taking up of persons or property at some point and putting them down at *another*." (Italics added.) (*Gloucester Ferry Co.* v. *Pennsylvania*, 114 U.S. 196, 203 [5 S.Ct. 826, 29 L.Ed. 158]; *cf. Star etc. Boat Co.* v. *County of San Diego*, 163 Cal.App.2d 534, 538 [329 P.2d 716]; *People* v. *One 1941 Cadillac Club Coupe*, 63 Cal.App.2d 418, 421 [3] [147 P.2d 49].)

It is evident that the word was used in the quoted sense in section 1007, for the section applies, without distinction, to transportation of "property" as well as to transportation of "persons." In respect to property, the Legislature could not have been thinking of transportation in a loop from and to the same point without intervening stop or unloading. What was intended is plainly transportation or movement between two different places, that is, the taking up at one point and the putting down at another.

The word "between" in ordinary usage connotes two different points bounding or defining some line or area. Such a connotation has been given the word by judicial decisions. In *State* v. *Haynes*, 175 Ark. 645 [300 S.W. 380, 381 [1]], it was held that in a statute requiring a license from the state's railroad commission for operation of motor vehicles "between cities and towns" the quoted phrase was used to "designate the termini of the line or route. . . ." (*Cf. United States* v. *12536 Gross Tons of Whale Oil Ex The Charles Racine*, 29 F. Supp. 262, 267 [1], [2].)

It thus appears that the commission exceeded its jurisdic-

tion in subjecting petitioners to the certification requirement of the statute.

In view of our conclusions, it is unnecessary to discuss other points argued by counsel.

The order of the commission is annulled.

Gibson, C. J., Traynor, J., Schauer, J., Peters, J., White, J., and Dooling, J., concurred.

The petitions of the respondent and of the real party in interest for a rehearing were denied March 28, 1962.