[No. A104466. First Dist., Div. Four. June 21, 2004.]

CITY OF ST. HELENA, Petitioner, v.
PUBLIC UTILITIES COMMISSION, Respondent;
NAPA VALLEY WINE TRAIN, INC., Real Party in Interest.

**[CERTIFIED FOR PARTIAL PUBLICATION\*]**

---

\*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of part II.B.

COUNSEL

Patrick J. Power for Petitioner.

Randolph L. Wu, Mary F. McKenzie and Judith Allen for Respondent.

Goodin, MacBride, Squeri, Ritchie & Day and James D. Squeri for Real Party in Interest.

OPINION

**REARDON, J.**—In this writ of review, the City of St. Helena (City or St. Helena) seeks annulment of various decisions of the state Public Utilities Commission (Commission or PUC) conferring public utility status on the Napa Valley Wine Train, Inc. (Wine Train). At issue is whether the City is preempted, by reason of the Wine Train's public utility status, from exercising its local jurisdiction regarding the placement of a Wine Train station in downtown St. Helena. We find the Wine Train does not qualify as a common carrier providing transportation, and is not subject to regulation as a public utility.

## I. BACKGROUND

This case has a long and complicated history that largely defines the issues on review. Initially, in 1988 the City was a party to a complaint filed with the PUC asking the Commission to deem the Wine Train a public utility. The complaint reveals St. Helena and others were concerned with the environmental impact of the Wine Train's proposed passenger service. The interested parties claimed the Wine Train was subject to the provisions of the California Environmental Quality Act (CEQA) and sought an order asserting the PUC's jurisdiction over the Wine Train's proposed passenger service. At that time, there was some uncertainty regarding issues of state and federal jurisdiction. Some of the original jurisdictional issues were resolved with the enactment of Public Resources Code section 21080.04 (added by Stats. 1990, ch. 1654, § 1, p. 7899), which designated the PUC as the lead agency for environmental review of the Wine Train's operations (Pub. Resources Code, § 21080.04, subd. (a)).

In March 1993, the PUC certified a final environmental impact report for the Wine Train project, which contemplated winery stops along the right of way and a minimum of one up-valley station, with shuttle service to wineries.

In June 1996, the PUC approved the Wine Train project subject to the Mitigation Implementation Program adopted in its decision, which provided for extensive mitigation measures, including limited days and limited hours of operation. (See *City of St. Helena v. Napa Valley Wine Train, Inc.* (1996) 66 Cal.P.U.C.2d 602 (*NVWT I*).) This decision did not make any findings that the Wine Train was a public utility. However, the PUC did make a finding that "[t]he interurban operation of Wine Train between Napa and St. Helena, including the stops described in the Proposed Project, is one of statewide, rather than merely municipal concern." (*Id.* at p. 631.) Although not stated as a conclusion of law, the PUC stated that it viewed its authority over the Wine Train as being concurrent with local agencies. (*Id.* at p. 610.) In July 1996, the City applied for rehearing. In November 1996, the PUC denied the petition for rehearing, but clarified its position on jurisdiction. (See *City of St. Helena v. Napa Valley Wine Train, Inc.* (1996) 69 Cal.P.U.C.2d 243, 246 (*NVWT II*).) Specifically, the PUC stated its authority was "paramount" to that of any local agency. (*Ibid.*) Again, there were no express findings of fact or conclusions of law regarding the Wine Train's status as a public utility.

In January 1999, the City filed a complaint with the PUC, alleging that the Wine Train was not operating as a public utility, and that, even if the Wine Train were to operate in the manner authorized by the PUC, it would not be a public utility. In its complaint the City alleged that the Wine Train was demanding that the City approve a station in downtown St. Helena. In August 1999, the PUC dismissed the complaint on the basis that the City was seeking an advisory opinion. (See *City of St. Helena v. Napa Valley Wine Train, Inc.* (1999) Cal. P.U.C. Dec. No. 99-08-018, 1999 Cal.PUC LEXIS 515 (*NVWT III*); the PUC's decision in *NVWT III* is the first of four orders challenged by the City.) The PUC deemed the complaint as essentially relitigating *NVWT I* and *NVWT II*. Following the issuance of *NVWT III*, the City filed an application for rehearing of the dismissal, the denial of which is also one of the contested orders in the instant action.

In September 1999, the City filed a petition for modification of *NVWT II*.[1] The City's petition asked the PUC to designate the Wine Train as an "excursion" train not subject to regulation as a public utility. Specifically, the City asked the PUC to declare that the Wine Train's passenger service was not "transportation" within the meaning of Public Utilities Code section 211[2]

---

[1] The specific modifications sought actually modified both *NVWT I* and *NVWT II*.

[2] Public Utilities Code section 211 defines a "common carrier" as "every person and corporation providing transportation for compensation to or for the public or any portion thereof . . . ." All further statutory references are to the Public Utilities Code.

and, thus, the Wine Train was not a "public utility" under section 216.[3] The City also asked the PUC to delete language relating to the PUC's "paramount jurisdiction," and to insert language that the PUC's authority was limited to the role of lead agency for the purposes of environmental review, and to conclude that the local agencies had paramount jurisdiction.

In June 2001, the PUC issued a decision regarding the City's request for modification. (See *City of St. Helena v. Napa Valley Wine Train, Inc.* (2001) Cal. P.U.C. Dec. No. 01-06-034, 2001 Cal.PUC LEXIS 407 (*NVWT IV*).) Although the PUC found that the City failed to make a case that the underlying facts had changed in any material way, it modified *NVWT I* and *NVWT II* and found that the Wine Train was not a public utility. Relying in part on *Golden Gate Scenic Steamship Lines, Inc. v. Public Utilities Com.* (1962) 57 Cal.2d 373 [19 Cal.Rptr. 657, 369 P.2d 257] (*Golden Gate Scenic Steamship*), the PUC found the Wine Train did not provide "transportation," because it did not provide point-to-point transportation. In *Golden Gate Scenic Steamship, supra,* 57 Cal.2d at page 380, the court held that ferries carrying passengers in a continuous loop around the San Francisco Bay, without stopping at any other point, and returning to the point of embarkation did not constitute "transportation." The Supreme Court defined "transportation" as " 'the taking up of persons or property at some point and putting them down at *another.*' " (*Ibid.*) The PUC also relied on two of its own decisions in determining the Wine Train was not a public utility. The PUC cited to *Re California Western Railroad, Inc.* (1998) 78 Cal.P.U.C.2d 292, 294–296 (*California Western Railroad*), in which it declared that the Skunk Train, providing an excursion service between Fort Bragg and Willits, was not a public utility. The PUC also cited to *Western Travel Plaza, Inc.* (1981) 7 Cal.P.U.C.2d 128, 135 (*Western Travel*), in which it held sightseeing is "essentially a luxury service, as contrasted with regular route, point-to-point transportation between cities, commuter service, or home-to-work service" (*ibid.*).

In *NVWT IV, supra,* Cal. P.U.C. Dec. No. 01-06-034, the PUC made the following findings of fact: "1. Wine Train's round trip excursion service cannot be distinguished from [the] Skunk Train['s] excursion service in any meaningful way. [¶] 2. Wine Train's proposal to disembark tourists up-valley for more sightseeing and/or to connect with day trip shuttle tours is not a type of regular route, point-to-point transportation between cities, commuter service, or home-to-work service. [¶] 3. Wine Train's passenger excursion service does not constitute regulated transportation and in providing such

---

[3] Section 216, subdivision (a) defines a "public utility" as including every common carrier providing a service to the public.

service, Wine Train is not functioning as a public utility. [¶] 4. The incidental public utility purpose, if any, of the proposed St. Helena station is de minimis."

In July 2001, the Wine Train filed an application for rehearing of *NVWT IV* based largely on procedural grounds. In January 2003, the PUC granted rehearing of *NVWT IV* and reversed itself, holding that the Wine Train is a public utility. (See *City of St. Helena v. Napa Valley Wine Train, Inc.* (2003) Cal. P.U.C. Dec. No. 03-01-042, 2003 Cal.PUC LEXIS 13 (*NVWT V*); *NVWT V* is the second decision challenged in the current action.) This decision made no express findings of fact or conclusions of law regarding the Wine Train's public utility status. In this decision, the PUC stated, among other things, that it believed its opinion in *California Western Railroad* (the Skunk Train) was in error and that its application was not supported by the record in the Wine Train case. (*Id.* at *34.) The PUC also found there was "little in the record to support the finding that the proposed project, which contemplated up-valley stops and use of the train as an alternative to automobile travel, is not point-to-point transportation." (*Id.* at *26.) The PUC, however, did not reference portions of the record that supported a finding that the Wine Train engaged in point-to-point transportation, other than to state that "the proposed project contemplates stops." (*Ibid.*) Additionally, despite its holding in *Western Travel*, that sightseeing is not a public utility function, the PUC stated "the fact that the Wine Train is described as a recreational, excursion service does not mean that it does not function as a public utility." (*Id.* at *26.)

In February 2003, the City filed for rehearing of *NVWT V*, on the grounds that the decision was contrary to law and the findings were not supported by substantial evidence. In October 2003, a divided Commission denied the City's petition for rehearing. (See *City of St. Helena v. Napa Valley Wine Train, Inc.* (2003) Cal. P.U.C. Dec. No. 03-10-024, 1988 Cal.PUC LEXIS 928 (*NVWT VI*); *NVWT VI* is the third challenged decision.) In *NVWT VI*, the majority found the City had failed to demonstrate good cause for rehearing in that it did not present any new facts regarding the Wine Train's passenger service. (*Id.* at *1.) Specifically, the majority found the City had not raised any new facts demonstrating that the Wine Train's proposed project was sufficiently similar to other excursion services that, as a matter of law, the PUC did not have jurisdiction. (*Id.* at *13.)

According to the majority, the Wine Train was distinguishable from the Skunk Train because the Wine Train project "envisioned up-valley stops and connections with buses that would transport passengers to wineries and other points of interest." (*NVWT VI, supra,* 1988 Cal.PUC LEXIS 928 at *11–12.) As such, the majority found the project as approved would involve point-to-point transportation. (*Id.* at *12.)

With respect to the City's challenge that *NVWT V* failed to provide adequate findings and conclusions of law, the majority stated that decisions on applications for rehearings did not generally require findings of fact and conclusions of law. (*NVWT VI, supra,* 1988 Cal.PUC LEXIS 928 at *16.) Nonetheless, the majority made several findings of fact, including a finding that: "According to [*NVWT I*] and [*NVWT II*], the Wine Train's passenger service is regulated transportation and the Wine Train is functioning as a public utility." (*NVWT VI, supra,* 1988 Cal.PUC LEXIS 928 at *17.) The majority also made the conclusion of law that: "The adoption of [*NVWT I*] and [*NVWT II*], and the imposition of mitigation measures, was dependent on the public utility status of the Wine Train's passenger service." (*Id.* at *18.)

In a brief, but effective, dissenting opinion, two commissioners found the Wine Train provided a recreational service not constituting point-to-point transportation subject to regulation as a public utility. (*NVWT VI, supra,* 1988 Cal.PUC LEXIS 928 at *19–20.) The dissent found regulation of the Wine Train "defie[d] common sense" and that the PUC should not "regulate what is essentially a restaurant on wheels." (*Id.* at *20–21.) The dissent also recognized the Commission maintained ample jurisdiction in the eventuality that the Wine Train began providing bona fide passenger service in the future. (*Id.* at *20.)

On the same day it issued *NVWT VI,* a divided PUC also denied the City's request for rehearing of *NVWT III,* which had dismissed the City's 1999 complaint as being advisory. (See *City of St. Helena v. Napa Valley Wine Train, Inc.* (2003) Cal. P.U.C. Dec. No. 03-10-025, 1999 Cal.PUC LEXIS 958 (*NVWT VII*); *NVWT VII* is the fourth and final challenged decision.) In its petition for rehearing, the City argued the Commission erred in dismissing its complaint because it was seeking relief in the nature of a declaratory judgment. The City argued that its complaint provided an actual controversy relating to the legal rights and duties of the parties, to wit: whether the Wine Train is a public utility with the authority to preempt local authorities. While acknowledging the possibility of an actual controversy, the majority failed to address the substance of the City's claim. (*NVWT VII, supra,* 1999 Cal.PUC LEXIS 958 at *6–7.) Finding the substance of the issues raised in the complaint had been addressed by *NVWT IV* and *NVWT V,* the majority found the issues raised in the petition for rehearing were moot. (*Id.* at *7.) The dissenting opinion was identical to the one issued in *NVWT VI.* (*Id.* at *7–9.)

The City filed a petition for writ of review challenging the PUC's decisions in *NVWT III, NVWT V, NVWT VI,* and *NVWT VII,* on the grounds that the determination that the Wine Train is a public utility is legally deficient.

## II. DISCUSSION

■ At issue is whether the PUC has jurisdiction to regulate the Wine Train as a public utility.[4] Public utilities have been described as being akin to governmental entities, enjoying considerable powers bestowed by the state, including the power of eminent domain. (*Gay Law Students Assn. v. Pacific Tel. & Tel. Co.* (1979) 24 Cal.3d 458, 469–470 [156 Cal.Rptr. 14, 595 P.2d 592]; see §§ 610–624.) However, not every business that deals with the public or is subject to some form of state regulation is necessarily a public utility. (*Allen v. Railroad Commission* (1918) 179 Cal. 68, 88–90 [175 P. 466].) We have found no bright-line rule for determining what constitutes a public utility. Rather, we look to established principles of statutory construction.

A. *Standard of Review.*

■ Review of a PUC decision is limited to whether: (1) the Commission acted without jurisdiction or in excess of its jurisdiction; (2) the Commission has not proceeded in the manner required by law; (3) the decision of the Commission is not supported by the findings; (4) the findings in the decision of the Commission are not supported by the substantial evidence in light of the whole record; (5) the order or decision was an abuse of discretion; and (6) the order or decision of the Commission violated any constitutional rights of the petitioner. (§ 1757; *Hillsboro Properties v. Public Utilities Com.* (2003) 108 Cal.App.4th 246, 254 [133 Cal.Rptr.2d 343].)

■ Whether the Wine Train is a public utility is a question of fact, subject to review by the substantial evidence standard. (*Nolan v. Public Utilities Com.* (1953) 41 Cal.2d 392, 397 [260 P.2d 790]; *Western Canal Co. v. Railroad Commission* (1932) 216 Cal. 639, 645 [15 P.2d 853].)
■ Since interpretation of the Public Utilities Code is a question of law, it is subject to our independent review. (*Hillsboro Properties v. Public Utilities Com., supra,* 108 Cal.App.4th at p. 254.)

B. *There are No Procedural Bars to Review.*\*

. . . . . . . . . . . . . . . . . . . . . . . . . . . .

---

[4] We express no opinion as to the PUC's jurisdiction with respect to safety and environmental issues.

\*See footnote, *ante,* page 793.

## C. *The PUC Acted in Excess of its Jurisdiction.*[6]

█ It is the City's position that the Wine Train does not provide "transportation" within the meaning of the Public Utilities Code, and is, therefore, not a common carrier subject to regulation as a´ public utility. Section 211 defines a "common carrier" as "every person and corporation providing *transportation* for compensation to or for the public or any portion thereof . . . ." (Italics added.) Section 216 defines a "public utility" as including "every common carrier . . . where the service is performed for, or the commodity is delivered to, the public or any portion thereof." (*Id.*, at subd. (a).) In construing these sections, we apply familiar principles. █ We begin with the fundamental rule that a court should ascertain the intent of the Legislature so as to effectuate the purpose of the law. (*Lewis v. Superior Court* (1999) 19 Cal.4th 1232, 1245 [82 Cal.Rptr.2d 85, 970 P.2d 872].) In determining legislative intent, we look first to the words of the statute, giving the language its usual ordinary meaning. (*Ibid.*) However, the literal meaning of the words in a statute may be disregarded to avoid absurd results. (*People v. Anzalone* (1999) 19 Cal.4th 1074, 1079 [81 Cal.Rptr.2d 315, 969 P.2d 160].) If the language is clear and unambiguous, there is no need for construction, nor is it necessary to resort to indicia of the Legislature's intent. (*Ibid.*)

### 1. *The Wine Train is Not a Common Carrier Providing "Transportation."*

Our Supreme Court has defined "transportation" as " 'the taking up of persons or property at some point and putting them down at *another.*' " (*Golden Gate Scenic Steamship, supra,* 57 Cal.2d at p. 380.) The PUC and the Wine Train attempt to limit *Golden Gate Scenic Steamship* by arguing that its explanation of "transportation" was based on its interpretation of section 1007, which requires any vessel transporting persons or property for compensation "between points in this state" to obtain a certificate of public convenience. Both parties appear to claim *Golden Gate Scenic Steamship* is not applicable because section 211, defining a common carrier, does not contain the "between points" language. We do not share such a limited view of *Golden Gate Scenic Steamship*. The Supreme Court's definition of "transportation" was not confined to section 1007; rather it was in accord with the word's ordinary meaning. (*Golden Gate Scenic Steamship,* at p. 380.) The ordinary usage of "transportation" has been consistently employed in everything from tax cases (see *Gloucester Ferry Co. v. Pennsylvania* (1885) 114 U.S. 196, 203 [29 L.Ed. 158, 5 S.Ct. 826]; *Star etc. Boat Co. v. County of San Diego* (1958) 163 Cal.App.2d 534, 539–540 [329 P.2d 716]), to contract cases (see *Sacramento Nav. Co. v. Salz* (1927) 273 U.S. 326, 328–329 [71

---

[6] Inasmuch as we find the PUC acted in excess of its jurisdiction (§ 1757, subd. (a)(1)), we need not address the City's other claims of error.

L.Ed. 663, 47 S.Ct. 368]), to drug cases (*People v. One 1941 Cadillac Club Coupe* (1944) 63 Cal.App.2d 418, 421 [147 P.2d 49]), and even to Internet pornography cases (see *U.S. v. Mohrbacher* (1999) 182 F.3d 1041, 1048).

■ We see no reason to depart from the ordinary meaning, and find the Wine Train does not provide "transportation." Presently, the Wine Train does not pick up passengers at one location and put them down at another location. Rather, the Wine Train provides a round-trip excursion from Napa. Throughout the proceedings, the PUC has made much of the fact that the approved project envisioned up-valley stops and connections with shuttles that would transport passengers to wineries and to other points of interest. The PUC argues the proposed project has not been realized because the Wine Train has not been permitted by the City to have an up-valley station. We are not persuaded by this bootstrap argument. In essence the PUC is arguing that before the Wine Train can function as a common carrier, it must be granted the powers of a public utility to preempt local jurisdiction.

■ The fact that the Wine Train could provide transportation in the future does not entitle it to public utility status now. An analogous issue was discussed in *Allen v. Railroad Commission, supra,* 179 Cal. at pages 82–83, where a private water company argued it was a public utility by reason of a statement in its articles of incorporation. The *Allen* court found the purposes avowed in articles of incorporation to engage in public service did not render a company's business one of public service. (*Id.* at p. 83.) The court further stated that such declarations of purpose merely provided the capacity to engage in public service if a corporation so desires. (*Ibid.*) Here, as in *Allen*, the proposed project stops do not fix the character of the Wine Train as being a public utility. Rather, the most that can be said is that the Wine Train has the capacity to provide transportation.

2. *The Wine Train is Not a Public Utility.*

■ The Wine Train is not subject to regulation as a public utility because it does not qualify as a common carrier providing "transportation." Additionally, even if an up-valley station were permitted, it could be argued that any transportation provided would be incidental to the sightseeing service provided by the Wine Train. The PUC has previously held that sightseeing is not a public utility function. (*Western Travel, supra,* 7 Cal.P.U.C.2d at p. 132.) In *Western Travel*, the PUC found sightseeing is "essentially a luxury service, as contrasted with regular route, point-to-point transportation between cities, commuter service, or home-to-work service." (*Id.* at p. 135.) Relying in part on *Western Travel*, the PUC previously found the Wine Train was not a public utility. (See *NVWT IV, supra,* 2001 Cal. PUC LEXIS 407.) We leave for another day the question of whether a sightseeing service is subject to regulation under section 216. Rather, we note the PUC's decisions in *NVWT IV* and *Western Travel* to illustrate the PUC's internal inconsistency.

This inconsistency is also evident in the *California Western Railroad* decision, in which the PUC concluded the Skunk Train, providing an excursion service between Fort Bragg and Willits, did not constitute "transportation" subject to regulation as a public utility. (78 Cal.P.U.C.2d at p. 295.) It is difficult to differentiate this service from that provided by the Skunk Train. The Skunk Train's excursion service involves transporting passengers from Fort Bragg to Willits, and then returning them to the point of origin for the purpose of sightseeing. (*Ibid.*) The PUC does little to distinguish the Wine Train from the Skunk Train. Rather, it simply states the Wine Train would not provide a continuous loop service due to its proposed up-valley stops. As previously discussed, the proposed stops may give rise to public utility status in the future, but presently do not mandate such a determination.

Finally, to the extent the PUC has made express findings of fact that the Wine Train is a public utility, such findings are not supported by substantial evidence. Presently, the Wine Train provides a round-trip excursion that is indistinguishable from the Skunk Train.

## III. DISPOSITION

The Commission's decisions in *NVWT III* (Dec. No. 99-08-018), *NVWT V* (Dec. No. 03-01-042), *NVWT VI* (Dec. No. 03-10-024) and *NVWT VII* (Dec. No. 03-10-025) are annulled to the extent they deem the Wine Train a common carrier providing transportation subject to regulation as a public utility.[7]

Kay, P. J., and Sepulveda, J., concurred.

Petitions for a rehearing were denied July 21, 2004, and the opinion was modified to read as printed above. The petition of real party in interest for review by the Supreme Court was denied September 29, 2004. George, C. J., did not participate therein.

---

[7] In petitions for rehearing, the Wine Train and PUC urge us to remand the cause to the Commission "to refresh and update the factual record" which, it is claimed, contains stale information. Our decision is based on the record before us and we decline to do so. However, we acknowledge that nothing in this opinion precludes the Wine Train from applying for public utility status based upon new facts, if any, relating to the issue of "transportation" consistent with this opinion.